827 P.2d 838

Mollie WHITTENBERG,
Claimant-Appellant,

v.

GRAVES OIL AND BUTANE COMPA-
NY, INC., and Mountain States Mutual
Casualty, Respondents-Appellees.

No. 12171.

Court of Appeals of New Mexico.

Dec. 9, 1991.

Certiorari Denied Feb. 20, 1992.

George Wright Weeth, Albuquerque, for claimant-appellant.

Reed L. Frost, Palmer & Frost, P.A., Farmington, for respondents-appellees.

## OPINION

HARTZ, Judge.

Mollie Whittenberg (Claimant) appeals from an order dismissing her claim for medical expenses and disability benefits under the Workers' Compensation Act. The workers' compensation judge (WCJ) found that Claimant was not an employee covered by the Act at the time of her injury and that her claim for disability benefits was barred by the statute of limitations. Claimant contends that the WCJ erred in (1) concluding that Claimant's claim for disability benefits was barred by the statute of limitations; (2) failing to find that the statute of limitations was tolled by the representations of an employee of the New Mexico Workers' Compensation Division (WCD); (3) determining that Claimant was an independent contractor and not an employee at the time of her injury; (4) failing to find that Graves Oil and Butane Company, Inc., (Company) and Mountain States Mutual Casualty Company (Insurer) were estopped from denying Claimant's status as an employee; (5) concluding that the pre–1987 workers' compensation law applies to this case; (6) failing to find that Claimant was covered by workers' compensation insurance; and (7) failing to award Claimant witness costs. We affirm the denial of disability benefits because the award of such benefits was barred by the statute of limitations and the statute-of-limitations defense was not precluded by estoppel. As for Claimant's medical benefits, we remand for further findings regarding whether Claimant was an employee or independent contractor at the time of the injury.

## FACTS

Claimant, a certified public accountant, was hired by Theron Graves (Graves), Company's president, as a bookkeeper in January 1981. She indicated to Graves that she did not want anything withheld from her paychecks and they therefore agreed that she would be paid as "contract labor." Claimant's first assignment was to investigate the financial position of a truck stop owned by Graves and leased to Company. She completed this assignment by March or April of 1981 and then worked on other tasks for Company.

Claimant performed duties with respect to payroll, inventory, financial statements, deposits, and credit card processing. It appears that initially Graves supervised Claimant, but he eventually left the supervision to Company employees. Claimant worked on Company premises and used Company equipment, although she provided her own typewriter, typewriter stand, and calculator. She received the same Christmas bonuses and departmental raises as Company employees, and took her turn on the Company switchboard with Company employees. Some testimony indicated, however, that she did not work the same hours as other employees, and apparently she was paid in a unique manner. Contract laborers for Company submitted invoices for their time and were paid out of the general account. Company employees were paid out of a separate payroll account. Claimant, in contrast, was paid a monthly salary out of the general account, but she never submitted invoices for her time. No state or federal tax deductions were taken out of Claimant's pay.

On May 13, 1981, Claimant fell and broke her hip while in the course and scope of her employment. Claimant was unable to return to work until that July. Insurer paid all the medical expenses and temporary total disability benefits incurred during her absence. Claimant was still on crutches when she returned to work. By October 1981, however, she had abandoned the crutches. The following February she was declared to be totally asymptomatic.

In 1984 Claimant changed the label for her relationship with Company from "contract labor" to "employee" in order to take advantage of group health insurance and profit-sharing plans. Although the change caused payroll deductions to be taken out of her salary, her responsibilities and working relationship with Company remained the same.

In late 1986 Claimant began to experience pain in the same hip she had injured in 1981. She consulted her physician on April 6, 1987. The physician advised her that she had developed aseptic necrosis and that she eventually would require reconstructive surgery. (Her doctor had told her at the time of her initial surgery in 1981 that she should "probably expect" to develop aseptic necrosis in the future.) Claimant then contacted the WCD and received a letter from a WCD employee indicating that Insurer would accept the claim. Claimant thereafter underwent surgery, with Insurer paying all the medical bills.

Claimant returned to work in September 1987, two days after her hip replacement surgery. She was unable to work as quickly or as efficiently as before and required assistance from co-workers to perform her task. Her condition gradually deteriorated. On November 10, 1988, Claimant was fired by Company for reasons unrelated to her condition. She has been unable to work since March 18, 1989. She has been hospitalized three times for complications related to her hip surgery. Insurer has not paid the medical bills.

## STATUTE OF LIMITATIONS

■ Claimant filed her claim under the Workers' Compensation Act against Company and Insurer on April 7, 1989. The WCJ ruled that the claim was not timely, thereby barring the award of disability benefits. This ruling was based on the WCJ's conclusion "[t]hat the statute of limitations started to run on July 18, 1981 or, at the latest, during the months of October/November 1986, as to a claim for weekly compensation benefits."

We affirm the WCJ's ruling on the ground that the statute-of-limitations period began on July 18, 1981, and had expired by the time the claim was filed. We address Claimant's contentions on appeal that the limitations period did not begin on July 18, 1981; that even if it began at that time, it was tolled for the great bulk of the time from that date until the claim was filed; and that even if the limitations period had otherwise expired, Company and Insurer were estopped from raising a statute-of-limitations defense.

Claimant agrees that the limitations period began when she knew or should have known that she was suffering a disability. *See Martinez v. Darby Constr. Co.*, 109 N.M. 146, 782 P.2d 904 (1989); *Smith v. Dowell Corp.*, 102 N.M. 102, 692 P.2d 27 (1984). The WCJ found that when Claimant returned to work on July 18, 1981, she "was restricted from performing her work in the usual manner because of the use of crutches for 4 to 6 months after her return" and "knew or should have known of her impairment and disability at the time she returned to work in July, 1981." On appeal, Claimant contends that there is no evidence to support the finding that she knew or should have known of a disability in 1981.

We disagree. Claimant testified that after she returned to work on crutches she "couldn't do a lot of things I did before." Although her office before had been upstairs, it was moved downstairs to accommodate her. During the time that she worked downstairs, somebody else had to do her work that involved going upstairs.[1]

---

1. In her deposition Claimant testified that while she was on crutches others had to carry folders, books, and boxes of checks for her. We do not rely on this testimony, however, because it is

She also testified that when she returned to work after the accident she could no longer drive to the bank to make deposits, as she had before the accident. To be sure, Claimant continued with the same job title and at the same rate of pay. Disability is defined, however, in terms of capacity to perform work, not wage-earning ability. *Shores v. Charter Servs., Inc.*, 112 N.M. 431, 816 P.2d 500 (1991). Thus, in *ABF Freight System v. Montano*, 99 N.M. 259, 260, 657 P.2d 115, 116 (1982), our supreme court held that although the plaintiff had returned to full-time employment and resumed the same job, he "had a disability as evidenced 'by his working with pain, by the reduction of his activities of his employment, by his requesting others to assist him in the duties of his employment, by seeking medical attention and by his application of home remedies to relieve his pain and disability.'" Similarly, in the recent decision in *Shores v. Charter Services, Inc.*, our supreme court rejected the employer's argument that the worker could not be disabled because she had resumed her pre-injury job full-time and at full pay and then took a job paying better than her injury-related job. The court wrote:

Here there was substantial evidence in the record to support the trial court's determination of partial disability. That evidence included worker's ongoing pain, her inability to lift heavy objects and to turn her torso fully while working. The fact that she can be gainfully employed at a greater salary than before does not detract from the court's finding of disability. It is perfectly rational and consistent to find that a worker fully can perform her job duties while at the same time being 15% disabled.

*Id.* at 433, 816 P.2d at 502. The record in that case indicates that the worker had a desk job as manager of a travel agency's service department. Thus, decisions by our supreme court compel us to sustain the WCJ's determination that Claimant was disabled at the time she returned to work in July 1981.[2]

■ Claimant contends that even if she was disabled when she returned to work in July 1981, the disability was only temporary and should not bar recovery for the permanent disability that she suffered beginning in 1987. It is settled law, however, that the running of the statute of limitations under the Workers' Compensation Act may not be delayed because a disability is relatively minor. As we wrote in *Noland v. Young Drilling Co.*, 79 N.M. 444, 446–47, 444 P.2d 771, 773–74 (Ct.App.1968):

The wording of the limitation statute indicates that the period of limitation begins to run from the time of employer's failure to pay compensation when the disability can be ascertained and the duty to pay arises.

\*     \*     \*     \*     \*     \*

It is not meant that a workman will lose the statutory benefit unless he files claim for a non-compensable injury which he has no reason to believe will result in a serious and compensable injury. Nor does it mean that he can disregard a compensable injury and wait until permanent injury results therefrom before he is obliged to file his claim. As soon as it becomes reasonably apparent, or should become reasonably apparent to a workman that he has an injury on account of which he is entitled to compensation and the employer fails or refuses to make payment he has a right to file a claim

---

unclear whether the deposition was admitted into evidence, although reference to it is made in Company's written final argument to the WCJ and it was included in the record on appeal.

**2.** We note that Claimant had the burden of persuading the WCJ that her claim was not barred by the statute of limitations. *See Baker v. Shufflebarger & Assocs.*, 77 N.M. 50, 419 P.2d 250 (1966). We need not decide, however, whether this placement of the burden of persuasion on Claimant means that she had the bur-

den of proving that she was *not* disabled when she returned to work and that therefore the WCJ could be sustained simply if it was rational for the WCJ to reject the contention that Claimant was not disabled when she returned to work. *See Sosa v. Empire Roofing Co.*, 110 N.M. 614, 798 P.2d 215 (Ct.App.1990) (appellate court will sustain finding against party with burden of persuasion if it was rational for the fact-finder to disbelieve the evidence contrary to the finding).

and the statute begins to run from that date. *There is nothing in the act as we read it which indicates that the running of the statute may be delayed until a more serious disability is ascertainable.* [Emphasis added.]

The statute begins to run once the worker is entitled to disability benefits and the employer fails or refuses to pay the benefits to which the worker is entitled. NMSA 1978, § 52–1–31(A) (Orig.Pamp.). In this case employer failed to pay any benefits to Claimant for disability during the time she was working while on crutches beginning in July 1981. Therefore, the limitations period for all disability benefits arising out of the 1981 accident began at the time of her return to work. *See ABF Freight Sys. v. Montano,* 99 N.M. at 260 n. 2, 657 P.2d at 116 n. 2.

■ We recognize that *Cordova v. City of Albuquerque,* 71 N.M. 491, 379 P.2d 781 (1962), reasoned that the employer is relieved of the duty to pay compensation for a period during which the worker is not disabled and therefore "it is only logical to conclude that the employee's obligation to file a suit during such period is suspended and the statute of limitations is thereby tolled." *Id.* at 493, 379 P.2d at 782. Applying that rule, the statute of limitations in this case would be tolled from at least early 1982 to late 1986, during which time Claimant suffered no disability. *Cordova,* however, did not remain controlling law for long. The legislative history is summarized by Judge Lopez in his dissent in *De La Torre v. Kennecott Copper Corp.,* 89 N.M. 683, 686–87, 556 P.2d 839, 842–43 (Ct.App.1976):

> In 1963, the statute [of limitations for workers' compensation cases] was amended, probably as a reaction to *Cordova * * *. Cordova* read into the statute a tolling if the employer was relieved of the duty to pay compensation. The 1963 version reversed *Cordova* and clearly stated that the statute of limitations *shall not* be tolled.
>
> In 1967, the legislature apparently had a change of heart. [The statute of limitations] was amended to permit the statute of limitations to toll for up to one year. (Emphasis in original.) (Citation omitted.)

That amendment is the one that governs this case. Section 52–1–31(A), after stating that the worker must file a claim within "one year after the failure or refusal of the employer or insurer to pay compensation," then adds: "This one-year period of limitations shall be tolled during the time a workman remains employed by the employer by whom he was employed at the time of such accidental injury, not to exceed a period of one year." Reading this provision in light of the legislative history beginning with *Cordova,* it is clear that the legislature rejected indefinite tolling of the limitations period when a worker regains full capacities after a period of partial disability. The sole tolling period permitted by the statute is a one-year period during which the worker remains employed by the employer, regardless of whether the worker recovers from partial disability during that one-year period.

In reaching this result, we must reject some of the language in *Zengerle v. City of Socorro,* 105 N.M. 797, 737 P.2d 1174 (Ct. App.1986). Starting with the proposition that temporary and permanent disability "are two concepts," in that opinion we stated that failure to bring a claim for temporary disability in the past would not bar a claim for permanent disability. To the extent that *Zengerle* is inconsistent with our holding in this case, however, we overrule *Zengerle,* pointing out that the opinion relied on the legislatively-overruled decision in *Cordova,* made no reference to the legislative history of Section 52–1–31(A), and did not point to any statutory language to support the proposition that the statute of limitations for a permanent disability does not begin to run until the disability becomes permanent. We note that the passage from *Noland v. Young Drilling Co.* quoted above supports the proposition that one suffering a temporary disability cannot wait until the disability becomes permanent before filing a claim.

Thus, the statute of limitations on Claimant's claim began to run in July 1981 and, even allowing for the one-year tolling while

Claimant remained employed with Company, the limitations period expired long before she filed her claim.

Finally, Claimant contends that the statute of limitations was tolled by representations made to her in a letter from a WCD employee in 1987. We need not consider whether the legal theory supporting this proposition is a valid one. By 1987 the statute of limitations had expired. Claimant does not suggest that a representation by the WCD could revive a claim that had already been time-barred. Nor are we aware of any doctrine that would provide for such revival. Therefore, we reject this contention.

For the foregoing reasons, we hold that Claimant's claim for disability benefits is barred by the statute of limitations.

MEDICAL EXPENSES—WAS CLAIMANT AN EMPLOYEE?

█ Although the statute of limitations bars an award of disability benefits to Claimant, she may still recover medical benefits. Under New Mexico law there is no statute of limitations with respect to claims for medical expenses under the Workers' Compensation Act. *See Lasater v. Home Oil Co.*, 83 N.M. 567, 494 P.2d 980 (Ct.App.1972), *overruled on different issue, Schiller v. Southwest Air Rangers, Inc.*, 87 N.M. 476, 535 P.2d 1327 (1975).

Nevertheless, the WCJ denied medical benefits to Claimant. The basis for the denial was that Claimant was not an employee of Company at the time of her injury. This case thus presents the question of when a professional performing services for a business is an employee of that business for purposes of the Workers' Compensation Act.

The WCJ made the following findings with respect to the employment relationship between Claimant and Company:

2. Claimant and * * * [Company] entered into an agreement in January, 1981, whereby Claimant would do contract bookkeeping for [Company].

3. Claimant and * * * [Company] participated in the agreement and acknowledged its validity by their conduct and verified the independent contractor relationship by their testimony at the formal hearing on January 4, 1990.

4. Claimant * * * provided a bookkeeping service for [Company] for which she was paid $1200 per month. No deductions for Federal or State taxes or FICA were deducted from payments made to Claimant and she was not paid out of the payroll account.

5. That the Claimant with her superior knowledge of bookkeeping chose the arrangement of being an independent contractor rather than that of an employee.

6. That the nature of the work of bookkeeping is one that is consistent with the independent contractor relationship.

7. That as a result of Claimant not being included as an employee in the payroll account of * * * [Company], workers' compensation insurance coverage was not carried on Claimant * * * *

8. Claimant indicated to employees at * * * [Company's] office that she was not a fellow employee subject to the direction and control of management and that her arrangement was independent with [c]ompany president, Theron Graves.

9. That the * * * [Company] did not exercise detailed control over the work of the Claimant nor was the Claimant required to report to work on a specific schedule but worked the hours she determined necessary to accomplish the [task?].

10. That the services of the Claimant were generally performed on * * * [Company's] premises. Support equipment was furnished both by Claimant and * * * [Company] for the performance of her bookkeeping function.

* * * * * *

14. Claimant reported to the emergency room personnel who treated her immediately after the injury that she was not an employee covered by worker's compensation.

15. Claimant's status changed to that of an employee in 1984 when she desired to become a member of * * * [Company's] pension and profit sharing plan by approval of * * * [Company], and being included as an employee on the payroll ledger.

16. Claimant * * * was not an employee of * * * [Company] on May 13, 1981.

The WCJ's pertinent conclusions of law were:

4. That at the time of the accident on May 13, 1981, Claimant was an independent contractor and not an employee covered by the Worker's Compensation Act.

10. Claimant is not entitled to an award for medical expenses because she was not an employee at the time of the accident causing the injury on May 13, 1981.

Several of these findings relate to the desire of the parties to have Claimant treated as an independent contractor. Clearly Claimant perceived tax advantages to being treated as an independent contractor rather than an employee and Company was willing to accommodate her in that regard. Nevertheless, even though the desires of the parties are pertinent and on occasion may be dispositive as to whether or not an independent-contractor relationship existed, *see* 1C A. Larson, *The Law of Workmen's Compensation* § 46.30 (1990) [hereinafter Larson], those desires are not entitled to great weight when all that the parties have done is agreed upon a label, without establishing the relative powers and duties of the parties in a way that conforms to the criteria for an independent-contractor relationship. *See id.* "[T]he relationship of the parties is not to be determined from the name attached to it by them, but from the consequences which the law imputes to their agreement to prevent evasion of the obligations which the act imposes upon employers." *Yerbich v. Heald,* 89 N.M. 67, 69, 547 P.2d 72, 74 (Ct.App.1976). *Cf. Christensen v. Dysart,* 42 N.M. 107, 76 P.2d 1 (1938) (employment contract depriving worker of benefits under Workmen's

Compensation Act is void). We suspect that the Internal Revenue Service would not feel bound by the label affixed by Claimant and Company with respect to the nature of their relationship. Likewise, for purposes of determining coverage under the Workers' Compensation Act, findings regarding the intent of the parties in this case cannot substitute for findings on other pertinent factors.

Other findings relate to the degree to which Company exercised control over Claimant's work. We have recognized two tests for determining whether a person is an employee or an independent contractor: the "power to control" test and the "relative nature of the work" test. *See Quintana v. University of Cal.,* 111 N.M. 679, 681–82, 808 P.2d 964, 966–67 (Ct.App.1991); Larson, *supra,* § 43.50. We have inconsistently said that the first test is the principal consideration, *Yerbich v. Heald; Tafoya v. Casa Vieja, Inc.,* 104 N.M. 775, 727 P.2d 83 (Ct.App.1986), and that the second test is the better method of determining status. *Burton v. Crawford & Co.,* 89 N.M. 436, 553 P.2d 716 (Ct.App.1976). The findings in this case suggest that the WCJ focused on the control test, in which the right to control the details of the work is often the overriding consideration. *See Dibble v. Garcia,* 98 N.M. 21, 644 P.2d 535 (Ct.App.1982).

■ In our view, however, the control test is not particularly helpful in determining the status of a professional, such as a doctor, lawyer, nurse, or accountant. After all, it would be foolhardy for a nonprofessional executive in a business to try to control the details of a professional's work. Yet there are myriad examples of such professionals whom we think of as employees of the businesses they serve— be they in-house counsel, a school nurse, or the company accountant. We should not lose sight of the proposition that the "words 'employer and employee' as used in the Workmen's Compensation Act are used in their natural sense and are intended to describe the conventional relationship between an employer who pays wages to an employee for his labor." *Id.* at 23, 644

P.2d at 537. Given the common understanding of the term "employee," we have no reason to doubt that the benefits of workers' compensation legislation were intended to extend to such professionals. Larson states, "[T]he appropriate test is not control of professional discretion, but chiefly the question whether the doctor, lawyer, or nurse is regularly at the disposal of the employer to perform a portion of the employer's work, as distinguished from being available to the public for professional services on his [or her] own terms." § 45.32(a). In particular, "[i]f the professional person is paid a straight salary for full-time service to the employer, he is an employee for compensation purposes regardless of any arguments about professional discretion." *Id.* § 45.32(b). We agree and add accountants to the list of professionals covered by the test. A professional giving full-time, exclusive services to a business should not be excluded from the definition of "employee" under the Workers' Compensation Act simply because no one in the business has the skills to oversee the details of the professional's work. We recognize the possibility of other factors overriding the conclusion that would be reached under Larson's test, but we are not aware of any presented by the evidence in this case.

■ Because the WCJ did not make findings with regard to whether at the time of the accident Claimant was potentially available to other clients or was committed to serving Company exclusively for the foreseeable future, we remand for further findings and conclusions. The compelling evidence that Claimant was an employee might tempt us to reverse outright the WCJ's ruling that she was an independent contractor. There is apparently no dispute that she had her own office on Company's premises, she was employed full-time by Company and did not serve other clients, she was paid a regular monthly salary and received raises and bonuses on the same schedule as other employees, she was not free to skip workdays, and she even performed non-professional tasks such as taking her turn at answering the phone. Nonetheless, remand is appropriate. Much

of the evidence establishing an employee-employer relationship postdates Claimant's accident. It is not certain that at the time of the accident it had been established that Claimant would work exclusively for Company, have a regular salary, and receive the same raises and bonuses as Company employees. Claimant had been working at the Company premises for only a few weeks prior to the accident. Claimant's burden at the hearing was to prove that she was an employee of Company at the time of the accident. We cannot say on this record that it would have been irrational for the WCJ to be unpersuaded by the evidence that Claimant was an employee. *See Sosa v. Empire Roofing Co.* Indeed, because the record would appear to support the WCJ's ruling, we might even affirm on that basis. We have doubts, however, concerning whether the WCJ used the proper legal standard in determining whether Claimant was an employee or an independent contractor. Such an error by the WCJ would hardly be surprising, because our precedents give little guidance on this point and may improperly suggest that the control test should apply to professionals. Justice therefore requires a remand.

Finally, we dispose briefly of Claimant's contention that Company and Insurer are estopped from denying her status as an employee. Of course, if this contention is meritorious, there would be no need for a remand.

■ Claimant raises two estoppel arguments. First, she claims that Company is collaterally estopped from denying that she was an employee because that issue was decided adversely to Company in proceedings before the New Mexico Department of Labor at which Claimant was awarded unemployment compensation benefits resulting from her termination in 1988. For collateral estoppel to apply, however, it is necessary that the issue in question in the pending litigation was "actually litigated" and "necessarily determined" in the prior litigation. *See Reeves v. Wimberly*, 107 N.M. 231, 755 P.2d 75 (Ct.App.1988). We question whether Claimant's employment

status was "actually litigated" before the Department of Labor because Company failed to appear at the departmental hearing. *See Restatement of Judgments (Second)* § 27 comment e (1982). *But cf. Callison v. Naylor*, 108 N.M. 674, 777 P.2d 913 (Ct.App.1989). In any event, the issue before the Department of Labor was Claimant's employment status at the time of her termination in 1988. The issue in this case was her employment status at the time of her accident in 1981. A finding that Claimant was an employee in 1988 does not require the inference that she was an employee in 1981. Thus, the issue in this case was not determined by the Department of Labor. Collateral estoppel cannot be invoked by Claimant.

■ Second, Claimant contends that Company and Insurer are estopped from denying her status as an employee because of their repeated conduct in acknowledging that status. For example, Insurer paid Claimant disability benefits for the eight weeks from the time of the accident until her return to work, paid all of her medical bills from her 1981 hospitalization, and then paid medical bills for her hospitalization in 1987. Claimant also mentions that a letter in 1987 from an employee of the WCD indicated that her benefits would be paid; Claimant contends that the employee was acting "as the apparent agent" of Insurer.

To prevail under this estoppel theory, Claimant must at least establish that she relied to her detriment on the conduct of Employer and Insurer. *See Orcutt v. S & L Paint Contractors, Ltd.*, 109 N.M. 796, 791 P.2d 71 (Ct.App.1990). In her brief on appeal, Claimant contends that the conduct by Employer and Insurer caused her not to pursue a potential tort claim against Company for her 1981 accident and caused her not to pursue a workers' compensation claim at a time when she could better gather evidence to establish her status as an employee. Those contentions, however, raise questions of fact to be determined by the WCJ. Yet they were not raised by any requested findings (or conclusions) proposed by Claimant to the WCJ. The sole

proposed finding that raises the issue of reliance is No. 85, which states, "Claimant reasonably relied on the letter of April 28, 1987 in forming her opinion that she would be paid whatever benefits to which she was entitled by [Insurer]." The WCJ rejected this proposed finding. On appeal, Claimant does not cite evidence that would have required the WCJ to find that Claimant had indeed reasonably relied on the letter. In any event, Claimant has not explained how any reliance by her on the letter prejudiced her in establishing her employee status for the purpose of bringing her claim for payment of medical bills. Therefore, we must affirm the WCJ's denial of this estoppel argument.

## ISSUES DISCUSSED SUMMARILY

We treat the remaining issues summarily. (1) Claimant challenges the applicability of the pre–1987 workers' compensation law only because the choice of governing law may well affect the rate of disability benefits. This issue was therefore mooted by our affirmance of the denial of such benefits. (2) We do not consider Claimant's contention that the WCJ erred in ruling that the failure of Company to pay premiums based on her employment meant that she was not covered by workers' compensation insurance. We do not understand the WCJ to have based the denial of benefits on that ground. (3) Finally, we find no abuse of discretion in the WCJ's denial of an award to Claimant of costs incurred for subpoenaing a witness to the hearing.

## CONCLUSION

For the reasons stated above, we affirm the denial of disability benefits to Claimant but reverse the denial of medical benefits, with instructions to the WCJ to prepare further findings and conclusions consistent with this opinion regarding Claimant's employee/independent-contractor status at the time of her 1981 accident.

IT IS SO ORDERED.

APODACA and CHAVEZ, JJ., concur.