901 P.2d 214

**Mary Elaine CARRILLO, Plaintiff–Appellant,**

v.

**Henry G. COORS, IV and Coors & Ginsberg, A Partnership, Defendants–Appellees.**

**No. 15513.**

Court of Appeals of New Mexico.

July 31, 1995.

Maria Garcia Geer, Margaret Barker, Levy & Geer, P.A., Albuquerque, for plaintiff-appellant.

James M. Curry, IV, Albuquerque, Thomas P. Gulley, H. Nicole Schamban, Civerolo, Wolf, Gralow & Hill, A Professional Association, Albuquerque, for defendants-appellees.

## OPINION

BOSSON, Judge.

This legal malpractice case arises out of a frustrated property settlement following a divorce. Plaintiff's ex-husband defaulted on an unsecured promissory note representing most of her half of the community estate, and Plaintiff was unable to recover the balance. Plaintiff then sued her attorney for failure to protect her from the consequences of default. After a bench trial, the trial court found the attorney was negligent, but concluded that the lack of any proven proximate cause between the attorney's negligence and Plaintiff's damages precluded liability. We address Plaintiff's claims that the trial court's conclusions are unsupported by its findings or by law. We affirm the judgment of the trial court.

## FACTS

Plaintiff and Dennis Wilkinson were married in 1970. During the marriage, Dennis and his father jointly acquired certain real property in which Plaintiff had a community interest. The property included a triplex and two cottages. The parties and their children lived in one unit of the triplex and rented out the remainder of the property. Dennis operated a landscape design business out of the house. In 1985, Plaintiff filed suit against Dennis for dissolution of their marriage. Dennis proposed a comprehensive settlement of all property and custody issues. Dennis sought to keep all the real property acquired during the marriage, and in return, Plaintiff would receive $18,000 in cash, various personal belongings, and an installment note from Dennis for $82,000, payable in bi-weekly installments of $625 with interest accruing at 10% per year.

Plaintiff went to attorney Henry Coors for legal advice and representation in regard to the proposed settlement. Dennis did not

retain counsel. After reviewing the proposed settlement offer, Coors advised Plaintiff that the financial terms were "generous" and that she should agree to the settlement. Coors inquired into whether the installment note could be protected by security, but Dennis would not agree to any encumbrance on the real estate. Also, Dennis shared ownership of the property with his father which he contended would have complicated its use as security. Therefore, Coors determined that it was not feasible to secure the promissory note. Plaintiff accepted the proposal. Coors drew up a formal Marital Settlement Agreement (MSA) setting forth the terms of the settlement, including the note, and Dennis duly executed a promissory note. On June 13, 1985, the court entered the final divorce decree, incorporating the MSA.

Dennis made payments on the note for approximately two years. In June 1987 he defaulted, owing Plaintiff over $64,000. There was conflicting testimony as to whether Coors instructed Plaintiff at that time that she could sue and obtain a judgment against Dennis for the balance of the note. In any event, Coors testified that he advised against filing a lawsuit, because in his opinion it would only antagonize Dennis and make him less able or less likely to pay. Instead, Coors recommended that Plaintiff renegotiate the terms of the note, and she did so, agreeing to a second promissory note a year later but reducing the debt to $30,000.

Dennis defaulted on the second note as well. This time Plaintiff sued, using Coors as her attorney to collect on the second note. Although the complaint was served on August 25, 1988, Coors did not obtain a default judgment against Dennis until May 10, 1989. On November 13, 1989, Dennis filed for bankruptcy, and the judgment was discharged. Plaintiff lost the balance of her promissory note. She then sued Coors for malpractice.

## DISCUSSION

The essence of Plaintiff's claim is that Coors should have obtained a lien against Dennis' property so as to protect Plaintiff from the consequences of default and, ultimately, bankruptcy. Two time periods are critical. At the time of divorce, June 1985, it is clear that Dennis had ample property, the entire marital estate, to secure Plaintiff's note. It is equally clear that Dennis would not agree to any encumbrance on the property. Therefore, with regard to the time of divorce, the question is whether Plaintiff could have created an involuntary lien against Dennis' property by recording the divorce decree or the MSA, assuming her attorney had advised her to do so. Failing that, Plaintiff must look to the second period of opportunity, the time of default two years later, or later still when default judgment was taken in May 1989. By then, Plaintiff clearly could have obtained a judgment lien, but the question is whether Dennis retained sufficient property to satisfy a lien, again assuming Plaintiff's attorney had advised her accordingly. We decide both questions against her.

### Time of Divorce

Plaintiff's primary argument is that Coors could have created a lien at the time of the divorce, even without Dennis' consent, by recording either the decree, the MSA, or the installment note in the office of the county clerk. Plaintiff looks for authority to the general lien statute, see NMSA 1978, Section 39–1–6 (Repl.Pamp.1991), which provides in part:

Any money judgment rendered in the supreme court, court of appeals, district court or metropolitan court shall be docketed by the clerk of the court and a transcript or abstract of judgment may be issued by the clerk upon request of the parties. The judgment shall be a lien on the real estate of the judgment debtor from the date of the filing of the transcript of the judgment in the office of the county clerk of the county in which the real estate is situate.

For the general lien statute to apply, the divorce decree must fit within the meaning of a "money judgment."

No New Mexico case has addressed the meaning of "money judgment" in this context. In *Gonzalez v. Gonzalez*, 103 N.M. 157, 703 P.2d 934 (Ct.App.1985), we allowed a creditor spouse to execute upon child support installments which were past due without

reducing each installment to a separate judgment. Citing to a "majority rule," we relied upon the original decree as a judgment sufficient to authorize execution on overdue installments. *Id.* at 160–62, 703 P.2d at 937–39. However, there was no effort to convert that original decree into a judgment lien with prospective effect; the opinion addressed only execution after-the-fact on payments then due and owing. Moreover, this Court relied on the fact that the debt was for child support and a specific statute provides that a decree awarding child support becomes a lien when properly filed. *Id.* at 161, 703 P.2d at 938.

The weight of authority from other jurisdictions interpreting general lien statutes supports the proposition that a divorce decree, calling for installment payments on a property settlement, does not simultaneously create a judgment lien. The decision of the Arizona Court of Appeals in *Bryan v. Nelson,* 180 Ariz. 366, 884 P.2d 252 (Ct.App. 1994) is a helpful illustration. In that case, the divorce decree awarded the marital residence to the husband while providing that the wife "be guaranteed" $20,000 when the residence was sold. *Id.* 884 P.2d at 253. The wife's attorney recorded the decree with the county clerk, attempting to create a statutory lien and secure her share of the sales price. *Id.* The husband then executed a mortgage on the residence to secure a new bank loan. *Id.* Ultimately, the husband defaulted on the loan, and the bank foreclosed. *Id.* The wife sought a judicial declaration that her recorded decree created a prior lien against the residence. *Id.* The Arizona Court of Appeals disagreed. *Id.* The financial obligation in a judgment, or a decree, "must be final and conclusive, and the amount due must be definite and certain" to create a statutory lien. *Id.* 884 P.2d at 255 (quoting *McClanahan v. Hawkins,* 90 Ariz. 139, 367 P.2d 196, 197 (1961)). The meaning of " 'final and conclusive' judgments[ ] [must be understood] in the context of the generally accepted rule that a judgment creates a lien when it is final, valid, definite, *and* collectible by execution against the debtor's property." *Id.* The wife's claim was unsuccessful because "a divorce decree that orders the payment of money at some future time is

not conclusive enough to support a general lien." *Id.*

The holding in *Nelson* is consistent with case law elsewhere. Although in recent years special judgment-lien statutes have been enacted for child and spousal support, the general rule continues in the absence of such a statute that financial obligations in a divorce decree do not give rise to a judgment lien unless they are for a fixed sum which is collectible immediately. *See Slack v. Mullenix,* 245 Iowa 1180, 66 N.W.2d 99, 101–02 (1954) (alimony); *Clark v. McCoy,* 273 Or. 81, 539 P.2d 639, 640 (1975) (en banc) (property settlement); *cf. Leifert v. Wolfer,* 74 N.D. 746, 24 N.W.2d 690, 693–94 (1946) (child support and alimony); *Roach v. Roach,* 164 Ohio St. 587, 583–92, 132 N.E.2d 742, 744–45 (Ohio 1956) (child support); *Bashore v. Thurman,* 152 Okla. 1, 3 P.2d 712, 713–714 (1931) (no lien under general lien statute for child support), *overruled by Jones v. Jones,* 294 P.2d 304 (Okla.1956) (lien under specific child support statute); *Boyle v. Baggs,* 10 Utah 2d 203, 350 P.2d 622, 623 (1960) (child support); *French v. Goetz Brewing Co.,* 3 Wash.2d 554, 101 P.2d 354, 356 (1940) (enforcement of injunction). *But see Franklin Bank & Trust Co. v. Reed,* 508 N.E.2d 1256, 1259 (Ind.1987) (alimony). *See generally* 46 Am.Jur.2d *Judgments* § 364 (1994); 49 C.J.S. *Judgments* §§ 458, 459 (1947); 1 Henry Campbell Black, *The Law of Judgments* § 407 (2d ed. 1902); 2 A.C. Freeman, *The Law of Judgments* §§ 930–932 (5th ed. 1925); C.T. Drechsler, Annotation, *Decree for Periodical Payments for Support or Alimony as a Lien or the Subject of a Declaration of Lien,* 59 A.L.R.2d 656 (1958).

■ We believe this is the most reasonable interpretation of our general lien statute. We join those jurisdictions which conclude that a divorce decree ordering future periodic payments is not a "money judgment" sufficient to create a lien. Unless a provision in the decree establishes a sum certain which is due immediately and enforceable by execution against the debtor's property (and we need not decide if that would necessarily create a lien), then no money judgment exists to which a judgment lien can attach; there is only a promise to

pay future installments which can be secured by a consensual mortgage. Plaintiff has not argued below or on appeal that an equitable lien could have been imposed by the court. *See Ridgway v. Ridgway,* 94 N.M. 345, 346, 610 P.2d 749, 750 (1980) (trial court has inherent authority to impose lien in divorce matters); *see also Leyden v. Citicorp Indus. Bank,* 782 P.2d 6, 9–10 (Colo.1989) (en banc) (wife entitled to an equitable lien to secure a promissory note in order to prevent unjust enrichment where husband discharged obligation in bankruptcy).

In this case, the MSA only required Dennis to execute an installment note, and he complied. The installment note called for Dennis to pay Plaintiff $625 every two weeks. Dennis met his obligation for the next two years. By its nature, an installment loan is for the payment of money in the future. Although the amount of the promissory note was certain and identifiable, there was no outstanding sum then due and owing or for two years thereafter. Plaintiff could not have brought suit to collect on anything. Therefore, we conclude that the divorce decree was not a "money judgment" within the meaning of the general lien statute. Even if Coors had recorded the divorce decree or the MSA, it would not have created a statutory lien against Dennis' property.[1] *See Title Guar. & Ins. Co. v. Campbell,* 106 N.M. 272, 277, 742 P.2d 8, 13 (Ct.App.1987) (under general lien statute existence of a valid money judgment is a prerequisite to the existence of a judgment lien). It follows, therefore, that Coors was under no obligation to advise Plaintiff to record her decree under this same statute. It would have been a futile effort to create a security where none was available.

Our interpretation of the general lien statute is buttressed by what the legislature has specifically done elsewhere. In NMSA 1978, Section 40–4–13 (Repl.Pamp.1994), a decree becomes a lien upon recording, but only for the limited purpose of securing payments of *spousal support. Cf.* NMSA 1978, § 40–4–15 (Repl.Pamp.1994) (same recording of decree creates a property lien to secure payments of child support). Logically, it would make little sense for the legislature to fashion this special procedure for creating support liens, if the generic general lien statute, relied upon by Plaintiff, were available for the same purpose. We are drawn to the inference that the legislature did not intend the general lien statute to apply to divorce decrees, at least not those providing for future installment payments. Thus, the legislature was compelled to fashion other specific lien statutes towards that end. Having created specific liens for spousal and child support, the legislature could easily have secured property settlements the same way but did not do so. We must respect both the silence and the spoken word of the legislature on this point.

Alternatively, Plaintiff argues from the literal wording of the general lien statute that a lien can be created by recording "a transcript or abstract of judgment" in lieu of the final decree. Section 39–1–6. Thus, regardless of whether the decree itself would have created a statutory lien, Plaintiff contends that Coors could have done the same thing by recording a transcript of that decree. We find this distinction unpersuasive. The transcript of judgment is only as effective as the judgment itself in creating a lien. Again, Coors cannot be held liable for failing to do something which would not have accomplished the desired end.

The trial court concluded that Coors was indeed negligent in how he negotiated the MSA and advised Plaintiff of her rights. However, the court also found that "Plaintiff failed to sustain her burden of proof that Plaintiff's award in the MSA could have been secured or protected." Based on the foregoing, we believe this conclusion was supported by the law and the evidence. We affirm the trial court on this point.

---

1. Plaintiff asserts that the trial court's failure to adopt requested findings by Coors is tantamount to a finding against him. The proposed findings stated that: "Recordation of the Marital Settlement Agreement would not have created a lien on Dennis Wilkinson's interest in real estate at the time of divorce[, and a]t the time a judgment was obtained on the modified obligation, Dennis Wilkinson owned no real estate to which a lien could attach." However, the findings made by the trial court were to the same effect in more general language. Therefore, we do not read anything into the rejection of other, consistent findings proposed by Plaintiff.

*Time of Default*

■ Two years after the divorce when Dennis began to default on the note, it is at least arguable that a recorded decree could then have matured into a "money judgment" giving rise to a judgment lien for a sum both certain and owing. This leads us to Plaintiff's second issue. Even if we were to assume arguendo that Coors could have obtained a lien on the portion of the community real estate awarded to Dennis, does Coors' failure to obtain such lien make him liable for the loss of the value of the note? Again, the trial court found negligence but no liability. The Court concluded: "Plaintiff Carrillo failed to sustain her burden of proof that Plaintiff could have recovered any monies from [Dennis], including but not limited to probability of collection, sufficient assets to pay, and so forth." The question on appeal is whether it was rational for the trial court to find that by the time of default Dennis did not own sufficient property or enough equity to satisfy a lien. *Cf. Lebeck v. Lebeck,* 118 N.M. 367, 373, 881 P.2d 727, 733 (Ct.App. 1994); *Whittenberg v. Graves Oil & Butane Co.,* 113 N.M. 450, 453 n. 2, 827 P.2d 838, 841 n. 2 (Ct.App.1991) ("[A]ppellate court will sustain finding against party with burden of persuasion if it was rational for the factfinder to disbelieve the evidence contrary to the finding[.]"), *cert. denied,* 113 N.M. 352, 826 P.2d 573 (1992).

Dennis and his father purchased the property in 1978 acting as tenants in common. Two separate properties supported a triplex and two cottages. During the marriage, Dennis and Plaintiff lived in one unit of the property and rented out the other units. During the years preceding the divorce, the property was mortgaged several times for amounts approximating $100,000 to provide financing for Dennis' landscape business. It is clear that even if a lien could have been obtained by Plaintiff on the realty in question, it would have been subordinate to an existing mortgage on such property. On February 9, 1987, while Dennis was still current on his note payments, he transferred all interest in the triplex to his parents in satisfaction of a debt owed to his father. Dennis testified that at the time of the transfer his

equity in the triplex was less than the amount of the debt. Dennis' parents continued to loan Dennis various amounts of money. His parents then borrowed $112,000 against the triplex property to pay off all prior encumbrances ($99,000) and to provide Dennis additional cash for his business from the balance. A week later, Dennis and his father mortgaged the other property, still jointly owned, to secure two loans totalling $30,025. Of this amount, $10,000 reimbursed Dennis' father for closing costs and $20,000 went to Dennis as a line of credit for his business. All this occurred before Dennis began to default on Plaintiff's note in June 1987. In February 1988, because of numerous loans from his parents, Dennis transferred the balance of his interest in the property to his parents. According to Dennis' testimony, he had no equity left in the property at the time of conveyance.

■ In legal malpractice cases, clients have the burden of showing not only negligence on the part of their attorney but also that their damages were proximately caused by that negligence. *See Resolution Trust Corp. v. Barnhart,* 116 N.M. 384, 388, 862 P.2d 1243, 1247 (Ct.App.), *cert. denied,* 116 N.M. 364, 862 P.2d 1223 (1993). When the attorney's negligence involves failure to take certain action, the client must show that if the attorney had acted then the client would not have suffered damage, at least not to the same degree. *Id.* In this case, Plaintiff had to prove that Coors' failure to secure a lien during late 1987 and 1988 caused her to lose something that otherwise she likely would have gained. However, by the time of default, Dennis had already transferred one of the two properties and the remaining property was mortgaged for $30,000. At best, the evidence was confusing as to whether Dennis retained any equity in this property or any other property to which a lien could have attached. Thus, it was rational for the trial court to conclude that Plaintiff failed to meet her burden of showing the value of the realty in question or that Dennis had sufficient property or other assets to satisfy a judgment lien. *See Lebeck,* 118 N.M. at 373, 881

P.2d at 733; *Whittenberg,* 113 N.M. at 453 n. 2, 827 P.2d at 841 n. 2.

Plaintiff has also contested the trial court's finding that Plaintiff "failed to sustain her burden of proof that Plaintiff could have recovered in the bankruptcy proceedings." Again however, the record fails to disclose any evidence that Plaintiff could have recovered her money in the bankruptcy proceedings. Without this proof, Plaintiff's argument is speculative and must fail.

*CONCLUSION*

We affirm the trial court's judgment in favor of the Defendant.

IT IS SO ORDERED.

DONNELLY and HARTZ, JJ., concur.