903 P.2d 861

Carlos **MONTOYA**, Worker–Appellee,

v.

**KIRK–MAYER, INC.** and **CNA Insurance Companies, Employer/Insurer–Appellants.**

No. 15914.

Court of Appeals of New Mexico.

Aug. 23, 1995.

Kimberly A. Franklin, Hatch, Allen & Shepherd, P.A., Albuquerque, for Employer/Insurer–Appellants.

Rod Dunn, Dunn Law Offices, Albuquerque, for Worker–Appellee.

## OPINION

DONNELLY, Judge.

1. Appellants, Kirk–Mayer, Inc. and CNA Insurance Companies, appeal from an order of the Workers' Compensation Judge (WCJ) granting Worker's motion for partial summary judgment and striking Appellants' affirmative defense that Worker's claim for compensation benefits was barred by the statutory limitation prescribing the time for filing a workers' compensation claim as set forth in NMSA 1978, Section 52–1–31 (Repl. Pamp.1991). Appellants also appeal from that portion of the compensation order which awarded Worker twenty-one percent permanent partial disability. For the reasons discussed herein, we reverse.

## FACTS

2. Worker was employed in Los Alamos, New Mexico, by Kirk–Mayer, Inc. as a computer keyboard operator. On January 14, 1992, he suffered a work-related injury to his back. He received workers' compensation temporary total disability benefits until April 30, 1992, when payment of benefits was terminated.

3. Worker was treated initially by his chosen physician, Dr. Christopher Cecil, until April 13, 1992, when Appellants changed his health care provider to Dr. Paul Legant. Dr. Legant found that Worker had reached maximum medical improvement on April 27, 1992, that he had a zero percent impairment rating, and that he should be released to return to his prior job. Following his release by Dr. Legant, Worker still was experiencing low back pain and some restriction of movement. Approximately seven-and-one-half months later, on December 23, 1992, Worker again consulted Dr. Cecil concerning his back injury. At that time, Dr. Cecil informed Worker that in his opinion he had a twenty-percent partial permanent impairment.

4. Worker filed a claim for workers' compensation benefits on July 19, 1993, and an amended claim for workers' compensation benefits on August 19, 1993. Appellants denied Worker's claim and, among other things, raised as an affirmative defense that the claim was barred by the statute of limitations. Worker filed a motion for partial summary judgment requesting that Appellants' affirmative defense be stricken. Following a hearing, the WCJ entered an order determining that "summary judgment in favor of Worker on [Appellants'] defense of the statute of limitations is granted."

5. Prior to trial, the WCJ appointed an independent medical examiner, Dr. Robert Benson, whose testimony was presented by deposition. Dr. Benson opined that Worker had an impairment rating of twenty-one percent as a result of his accident. After trial on the merits, the WCJ found that Worker suffered a work-related accident to his back resulting in a permanent impairment of twenty-one percent to his body as a whole.

*PROPRIETY OF SUMMARY JUDGMENT*

■ 6. Appellants contend that the WCJ erred in striking their affirmative defense which asserted that Worker's claim was barred by the statute of limitations. Appellants argue that the order granting summary judgment was improper because their response to the motion relied on deposition testimony of Worker, who himself indicated that there were genuine disputed issues of material fact concerning whether he knew or reasonably should have known that he suffered a compensable disability following the termination of the payment of his workers' compensation on April 30, 1992, so as to require that his claim be filed prior to July 19, 1993.

7. Appellants point out that Worker was injured on January 14, 1992, and his complaint was first filed on July 19, 1993, over one-and-one-half years following his accident. Appellants argue that under Section 52–1–31(A), Worker was required to file his claim within one year and thirty-one days after his employer or insurer failed or refused to pay additional compensation benefits. *See Whittenberg v. Graves Oil & Butane Co.*, 113 N.M. 450, 454, 827 P.2d 838, 842 (Ct.App. 1991), *cert. denied*, 113 N.M. 352, 826 P.2d 573 (1992).

8. Appellants also note that their response to the motion for summary judgment cited to testimony given by Worker indicating that in April 1992, although "Dr. Legant wanted [him] to work light duty and not [to work] a forty hour ... week, [but only] part time," and payment of his compensation had been stopped, he was still experiencing pain in his back and felt that he was entitled to compensation benefits "until [he] got better." Appellants refer to statements of Worker indicating that in April 1992 when he went to Dr. Legant's office, the doctor did not examine his back but told him that in his opinion he was ready to return to work, and that Worker felt this examination was insufficient. Additionally, Appellants assert that a factual issue existed concerning when Worker knew he had a disability because Worker admitted that after he was told by Dr. Legant in April 1992 that he had no further disability, Worker questioned this decision and consulted an attorney approximately three weeks later.

9. Worker responds to these arguments by asserting that the statute of limitations could not have begun running prior to December 23, 1992, because there was no expert medical evidence indicating that Worker had suffered a permanent impairment resulting from a work-related accident. Worker also points to the Workers' Compensation Act in effect at the time of his injury on January 14, 1992, and argues that because

the Act was substantially amended effective *January 1, 1991,* his disability could not reasonably be ascertained until three separate requirements were met. *See* NMSA 1978, § 52–1–24(A) (Repl.Pamp.1991) (effective January 1, 1991). First, an "anatomical or functional abnormality" must be shown to exist; second, Worker's abnormality must be capable of determination by a "medically or scientifically demonstrable finding"; and third, evidence must be available indicating that the medically or scientifically demonstrable abnormality suffered by Worker is "based upon ... the American [M]edical [A]ssociation's [G]uide [AMA Guide] to the evaluation of permanent impairment or comparable publications of the American [M]edical [A]ssociation." *Id.*

10. Worker contends that since he was required under Section 52–1–24(A) to substantiate that he had sustained a compensable injury by presenting proof through a qualified medical care provider that he had suffered an anatomical or functional abnormality after achieving maximum medical improvement based on the most recent edition of the AMA Guide or comparable publications of the AMA, he should not have been expected to file a claim for compensation benefits before a medical care provider had informed him of the existence of an impairment. Thus, he asserts that until he was advised by Dr. Cecil on December 23, 1992, that he had sustained an impairment, there was no medically or scientifically demonstrable finding of an anatomical or functional abnormality as determined by the AMA Guide or comparable publications of the AMA. He also argues that had he filed a claim prior to December 23, 1992, his claim would have been subject to dismissal because he had no evidence to sustain such claim or expert medical testimony to satisfy the requirements of Section 52–1–24.

11. Worker argues that since Dr. Legant told him that he had a zero percent impairment in April 1992, informed him that he had achieved maximum medical improvement, and told him he could return to work, it is unreasonable to expect him to have filed a claim for disability when he has been told by a medical expert that no disability existed.

*See Smith v. Dowell Corp.,* 102 N.M. 102, 104, 692 P.2d 27, 29 (1984) (it is patently unfair to expect laborer to have greater knowledge concerning existence of disability than medical expert).

12. Appellants, relying upon *Whittenberg,* 113 N.M. at 454, 827 P.2d at 842, and earlier appellate authority, urge adherence to the rule recognized by both our Supreme Court and this Court that the statute of limitations for filing a workers' compensation claim begins to run once the worker is entitled to disability benefits, the employer fails or refuses to pay the benefits to which the worker is entitled, and the worker knew or reasonably should have known that he had a compensable claim. *Id.; see Smith,* 102 N.M. at 104, 692 P.2d at 29; *Aragon v. Furr's, Inc.,* 112 N.M. 396, 398, 815 P.2d 1186, 1188 (Ct. App.), *cert. denied,* 112 N.M. 388, 815 P.2d 1178 (1991); *see also Lent v. Employment Sec. Comm'n,* 99 N.M. 407, 409, 658 P.2d 1134, 1136 (Ct.App.1982), *cert. quashed,* 99 N.M. 226, 656 P.2d 889 (1983); *Noland v. Young Drilling Co.,* 79 N.M. 444, 446–47, 444 P.2d 771, 773–74 (Ct.App.1968). Thus, the central question posed is whether changes in the Workers' Compensation Act, which became effective January 1, 1991, modify the general rule voiced in *Smith* and *Whittenberg.*

13. We think the evidence relied upon by Appellants in opposition to the motion for summary judgment was sufficient to give rise to a material, disputed factual issue concerning whether Worker knew, or by the exercise of reasonable diligence, should have known in April or May 1992 that he had a compensable injury so as to trigger the running of the statute of limitations. *See* § 52–1–31(A). Here, different inferences can reasonably be drawn from Worker's own statements as to when he knew or reasonably should have known he had a compensable disability.

14. Worker is correct that our Supreme Court has held in a latent injury case that it is unfair to hold an individual who has little if any understanding of his medical condition to the same level of understanding as a medical expert. *See Smith,* 102 N.M. at 104, 692 P.2d at 29. Although Worker contends he should not be held to have appreciated that

he sustained a disability until he was told of this fact by Dr. Cecil on December 23, 1992, the fact that Worker was not so informed until then bears upon the weight to be accorded his testimony and the reasonableness of his delay. The more restrictive requirements of evidentiary proof adopted by our legislature, which requirements took effect January 1, 1991, relating to the establishment of a worker's disability and the quantification of such disability, do not, under the evidence existing here, permit resolution of the issue raised by Appellants' affirmative defense as a matter of law.

15. Where evidence exists from which different inferences may be drawn concerning when the worker knew or should have known that he had suffered a disability at an earlier date and where the employer failed or refused to pay further compensation benefits, determination of when the worker first knew of the existence of his disability cannot be decided as a matter of law. *See Trujillo v. Treat,* 107 N.M. 58, 59–60, 752 P.2d 250, 251–52 (Ct.App.1988) (even where basic facts are undisputed, if equally logical but conflicting inferences can be drawn, summary judgment is improper); *National Excess Ins. Co. v. Bingham,* 106 N.M. 325, 328, 742 P.2d 537, 540 (Ct.App.1987) (same); *cf. Ryan v. Bruenger M. Trucking,* 100 N.M. 15, 17, 665 P.2d 277, 279 (Ct.App.) (whether worker was reasonably led to believe compensation would be paid so as to toll statute of limitations is factual question that can be decided on summary judgment only when the material facts are not in dispute), *cert. denied,* 100 N.M. 53, 665 P.2d 809 (1983).

16. In adopting the amendments to Section 52–1–24 and NMSA 1978, Sections 52–1–26, –49, and –4–1 (Repl.Pamp.1991) (effective January 1, 1991), we do not believe the legislature intended to abrogate the rule recognized in *Smith* or *Whittenberg,* or the precedent upon which they rely, so as to limit the commencement of the running of the statute of limitations in workers' compensation cases to situations where a worker is actually told by a health care provider that he has suffered a permanent impairment. In *Smith* our Supreme Court reversed an order granting summary judgment to the employer and remanded for a trial of a worker's claim for compensation benefits on the merits, "including [the factual resolution of] the question of when the plaintiff discovered that there was a compensable injury." *Smith,* 102 N.M. at 105, 692 P.2d at 30.

17. In determining whether summary judgment is proper, a party opposing summary judgment is to be given the benefit of all reasonable doubt in deciding whether a question of fact exists, and the court should view the matters presented in a light most favorable to support the right of trial on the merits. *Blauwkamp v. University of N.M. Hosp.,* 114 N.M. 228, 236, 836 P.2d 1249, 1257 (Ct.App.), *cert. denied,* 114 N.M. 82, 835 P.2d 80 (1992). Even if the WCJ believes the party resisting summary judgment may not ultimately prevail at a trial on the merits, summary judgment should not be entered when there are one or more disputed material facts. *Bergerson Plumbing & Heating, Inc. v. Poole,* 111 N.M. 525, 528, 807 P.2d 223, 226 (1991).

18. The fact that a worker is restricted under Section 52–1–24 and NMSA 1978, Section 52–1–28 (Repl.Pamp.1991) to proving his or her claim by the testimony of a qualified health care provider agreed upon by the parties or approved by the WCJ, and that the health care provider is directed to utilize the AMA Guide or other comparable publications of the AMA in establishing and quantifying the degree of disability does not limit the running of the statute of limitations to only those situations where a health care provider has actually informed a worker that he or she has sustained a permanent impairment. Under both the former Workers' Compensation Act and the law applicable here, resolution of when the worker should be deemed to have sustained a permanent impairment generally constitutes a factual issue, and questions involving subjective matters, such as an individual's knowledge or his or her awareness of a material fact, present issues normally unsuitable for resolution by summary judgment. *See Hernandez v. Levi Strauss, Inc.,* 107 N.M. 644, 647, 763 P.2d 78, 81 (Ct.App.), *cert. denied,* 107 N.M. 673, 763 P.2d 689 (1988); *see also SGM Partnership v. Nelson,* 5 Haw.App. 526, 705 P.2d 49, 52

(1985) (actual knowledge is a factual determination); *cf. Germany v. Murdock,* 99 N.M. 679, 681, 662 P.2d 1346, 1348 (1983) (where circumstances are such that a reasonably prudent person would make inquiries, law charges person with notice of facts that inquiry would have disclosed); *Greiser v. Brown,* 102 N.M. 11, 14, 690 P.2d 454, 457 (Ct.App.1984) (summary judgment held inappropriate where issue posed involves an individual's state of mind). Because a question of fact exists as to when Worker knew or should have known he had a compensable work-related injury, the WCJ erred in granting summary judgment.

## SUFFICIENCY OF THE EVIDENCE

■ 19. Although our resolution of the first issue necessitates a remand for a trial on the merits and determination of the factual issues raised by Appellants' affirmative defense, we address a second issue posed by Appellants which may arise on retrial.

20. The WCJ found that "[a]s a natural and direct result of the accident of January 14, 1992, to a reasonable medical probability, Worker suffered a permanent impairment of 21% to [his] body as a whole." The WCJ also found that Worker was entitled to receive a permanent partial disability rating equal to his impairment of twenty-one percent "from [and after] April 27, 1992."

21. Appellants assert that the record is devoid of substantial evidence to support a finding that Worker suffered from a twenty-one-percent impairment as of April 27, 1992. Appellants contend that there was no expert medical evidence which directly supports a finding that Worker was twenty-one percent disabled as of April 27, 1992. We disagree.

22. Three different physicians testified concerning Worker's condition. Dr. Legant stated that in his opinion Worker reached maximum medical improvement as of April 27, 1992, and that Worker had no impairment at the time he conducted his examination of Worker on April 27, 1992. Dr. Legant testified that he was not certain whether he utilized the AMA Guide to the evaluation of permanent impairment in evaluating Worker.

He also testified that it was likely that he did not use the third edition of the AMA Guide in evaluating Worker's condition because he disagreed with its methodology for rating impairment based on loss of range of motion.

23. Dr. Cecil testified that he examined Worker on December 23, 1992, and that his examination revealed that Worker had a twenty-percent impairment as of that date. Thereafter, the WCJ appointed Dr. Benson as an independent medical examiner. Dr. Benson testified that based on his examination of Worker and on the AMA Guide, third edition, Worker had an impairment rating of twenty-one percent as a result of the work-related accident.

■ 24. Although in adopting her finding of fact, the WCJ rejected Dr. Legant's opinion that Worker had no impairment on April 27, 1992, the WCJ nevertheless could accept Dr. Legant's opinion as to the date when Worker reached maximum medical improvement. Because Dr. Legant indicated he did not base his impairment rating on the AMA Guide, the WCJ could properly disregard that portion of the doctor's opinion. *See Chapman v. Jesco, Inc.,* 98 N.M. 707, 708, 652 P.2d 257, 258 (Ct.App.1982) (fact finder may reject expert's opinion in whole or in part).

25. In voicing his opinion that Worker was twenty-one percent impaired, Dr. Benson stated he believed that Worker probably reached maximum medical improvement about one year after his injury. We believe the WCJ could properly infer, from the opinions of Drs. Legant and Benson, that Worker reached maximum medical improvement on April 27, 1992, and determine at that point Worker's disability should properly be rated at twenty-one percent. *See Montoya v. Torres,* 113 N.M. 105, 109, 823 P.2d 905, 909 (1991) (in considering sufficiency of evidence, reviewing court views testimony and evidence in light most favorable to prevailing party and disregards inferences or evidence to contrary); *McCurry v. McCurry,* 117 N.M. 564, 567, 874 P.2d 25, 28 (Ct.App.1994) (appellate court will view facts and evidence

in light most favorable to support trial court's decision, indulge in all reasonable inferences in support of court's findings, and disregard inferences or evidence to the contrary); *Alfieri v. Alfieri,* 105 N.M. 373, 377, 733 P.2d 4, 8 (Ct.App.1987) (same).

## CONCLUSION

26. The order granting summary judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

27. IT IS SO ORDERED.

APODACA, C.J., and WECHSLER, J., concur.