795 P.2d 991

PROFESSIONAL INSURORS, INC., a New Mexico corporation, d/b/a Bundy, Seligman & Thomas Insurance Agents and Brokers, Plaintiff–Appellant,

v.

BUCK SCOTT & SON MOTOR COMPANY, INC., a New Mexico corporation, Buck Scott and Jane Doe Scott, husband and wife, and Richard G. Blanken, Defendants–Appellees.

No. 18300.

Supreme Court of New Mexico.

May 29, 1990.

Fairfield, Farrow, Hunt, Reecer & Strotz, P.C., John E. Farrow, Catherine Davis, Albuquerque, for plaintiff-appellant.

Kemp, Smith, Duncan & Hammond, P.C., Steven P. Bailey, Albuquerque, for defendant-appellee Blanken.

Dennis K. Wallin, Albuquerque, for defendants-appellees.

OPINION

BACA, Justice.

Plaintiff-appellant[1] Professional Insurors, Inc., doing business as Bundy, Seligman & Thomas Insurance Agents and Brokers (BS & T), brought suit against Buck Scott & Son Motor Company (Buck Scott Motors), Buck and Claravon Scott (Scotts), and Richard Blanken to recover for insurance premiums owed by the dealer following a bulk transfer of the corporate assets to Blanken. The district court granted Blanken summary judgment on BS & T's claims of defective notice under the Bulk Transfer Act, NMSA 1978, Sections 55-6-101 to -110 (Act), and for fraud, misrepresentation, and breach of a third-party beneficiary contract. We reverse the grant of the summary judgment motion and remand for trial in accordance with this opinion.

In July 1986, an agreement was executed between the Scotts, Buck Scott Motors, and Blanken providing for the purchase of the corporate assets by Blanken. On October 9, pursuant to NMSA 1978, Section 55-6-106 of the Act, notice was sent to creditors of the corporation advising them of the impending transfer of assets. The notice indicated that Blanken would assume the floor plan financing for vehicles and obligations for vehicle repair covered by warranty, but no other debts of the transferor. The notice also listed the estimated total debt of the transferor as $495,000, and the consideration to be paid was listed as $562,500, plus an amount to be determined at a valuation date based on a physical inventory and a determination of the exact amount of debt assumed by Blanken. Furthermore, the notice informed creditors that a list of creditors and a schedule of property was available for inspection, and it indicated that creditors should file claims with Blanken within thirty days of the notice.

On the day of closing, November 14, Blanken assumed certain promissory notes that Scotts owed to Barclays American/Financial, Inc. (Barclays) representing

his assumption of the floor plan financing. At closing, $778,000 was paid to Barclays from the proceeds of the sale, and Scotts paid Barclays an additional $28,042 to satisfy a total debt owed Barclays by Scotts of $801,380. The amount of this debt had been listed as "unknown" on the list of creditors. Buck Scott Motors' total debt exceeded a million dollars; it had been estimated on the notice as $495,000. Although the notice stated that new consideration would be $562,500 (plus an amount to be determined at the valuation date), and Blanken actually paid $778,000 as new consideration, no funds were available from the proceeds of the sale to pay any of the debt listed on the notice.

We address the following issues to determine if summary judgment was appropriate: (1) Whether the notice of transfer provided to creditors pursuant to the Bulk Sales Act was deficient so as to render the transfer ineffective against the creditors of the transferor; (2) whether a material issue of fact exists regarding Blanken's alleged breach of the purchase agreement, and (3) whether there is a material factual issue regarding Blanken's alleged fraud.

I

NMSA 1978, Section 55-6-104(1) states in pertinent part that a bulk transfer is not effective against a creditor of the transferor unless:

(a) the transferee requires the transferor to furnish a list of his existing creditors prepared as stated in this section; and

(b) the parties prepare a schedule of the property transferred sufficient to identify it; and

(c) the transferee preserves the list and schedule for six months next following the transfer and permits inspection of either or both and copying therefrom at all reasonable hours by any creditor of the transferor, or files the list and sched-

---

1. Blanken, in his answer brief, has pointed out that BS & T has incorrectly denominated itself as appellee rather than appellant. We appreciate his attention to detail. It is unfortunate, however, that he has not turned his sharp eye to the cover page of his own brief, where he refers to both parties as appellant.

ule in the office of the secretary of state * * *.

Subsection (2) requires that the list of creditors contain "the names and addresses of all creditors of the transferor, with the amounts *when known.*" § 55–6–104(2) (emphasis added). Subsection (3) states: "Responsibility for the completeness and accuracy of the list of creditors rests on the *transferor,* and the transfer is not rendered ineffective by errors or omissions *unless the transferee is shown to have had knowledge.*" § 55–6–104(3) (emphasis added).

■ The "knowledge" of the transferee required in subsection (3) to render the transaction ineffective against the creditors of the transferor because of an inaccurate list is actual, not constructive, knowledge. *See* § 55–1–201(25)(c); *see, e.g., Federal Ins. Co. v. Pipeco Steel Corp.,* 125 N.J.Super. 563, 312 A.2d 510 (App.Div.1973) (transferee's constructive knowledge that list of creditors insufficient does not make transfer ineffective; actual knowledge required); *Adrian Tabin Corp. v. Climax Boutique, Inc.,* 34 N.Y.2d 210, 356 N.Y. S.2d 606, 313 N.E.2d 66 (1974) (transferee has no duty to inquire about sufficiency of list of creditors).

The Act provides for notice of the transaction to creditors in Section 55–6–105. The provision states: "In addition to the requirements of [Section 55–6–104], any bulk transfer subject to this article except one made by auction sale (Section 6–107) is *ineffective against any creditor of the transferor unless* at least ten days before he takes possession of the goods or pays for them, whichever happens first, *the transferee gives notice of the transfer* in the manner and to the persons hereafter provided." (Emphasis added.)

The manner of notice is described in Section 55–6–106, which states in relevant part:

(1) The notice to creditors (Section 6–105) shall state:

(a) that a bulk transfer is about to be made; and

(b) the names and business addresses of the transferor and transferee * * *; and

(c) whether or not all the debts of the transferor are to be paid in full as they fall due as a result of the transaction, and if so, the address to which creditors should send their bills.

(2) If the debts of the transferor are not to be paid in full as they fall due or if the transferee is in doubt on that point then the notice shall state further:

(a) the location and general description of the property to be transferred and the *estimated total of the transferor's debts* * * *. [Emphasis added.]

■ Although the parties have not delineated them as such, this case presents two issues concerning the Bulk Sales Act and its notice requirements.[2] One issue involves a determination of whether Blanken knew the amount of debt owed to Barclays for the purposes of the Section 55–6–104 list; the notice in this case was defective, not because a creditor of whom the transferee had no knowledge was omitted, but because the *amount of debt* was omitted. Blanken had actual knowledge that Barclays was a creditor, included Barclays on the list, knew Barclays provided floor plan financing, was experienced in the automobile business, and understood that floor plan financing comprised by far the most outstanding debt, but claims he did not know the exact amount of debt. We must determine whether failure to include at least an approximation of the debt under these circumstances is sufficient to deem the transfer ineffective against a creditor. The second bulk transfer issue requires us to determine the propriety of the vast discrepancy in the estimated total debt as listed in the notice required to be sent to

---

**2.** BS & T has raised a third issue: whether the notice was defective because it identified the transferee as Richard G. Blanken, whereas the sale was ultimately made to Blanken in a corporate capacity as Dick Blanken, Inc. This issue was not raised in the district court, and we will not consider it on appeal in our determination of whether summary judgment was appropriate. *See Holguin v. Smith's Food King Properties, Inc.,* 105 N.M. 737, 737 P.2d 96 (Ct.App.1987).

creditors pursuant to Sections 55–6–105 and –106.

■■■ The official comment to Section 55–6–101 describes the purpose of the bulk sales law—to address several types of commercial fraud. The notice requirement is essential to achieve that purpose, because it allows creditors who know of the impending transaction to conduct investigations and determine whether they should take action to protect their interests. *Id.; see Danning v. Daylin, Inc.*, 488 F.2d 185 (9th Cir.1973). Furthermore, underlying the requirements of the Act is the good faith requirement of Section 55–1–203, which requires "honesty in fact in the conduct or transaction concerned." *See* § 55–1–201(19) (definition of good faith). This does not create a duty on the part of the transferee to independently verify the list provided by the transferor, but allows the creditors to raise the issue of bad faith by the transferee in accepting the transferor's affidavit. 6 W.D. Hawkland, *Uniform Commercial Code Series* § 6–104:03 (1984). The requirement of good faith, although not creating a constructive knowledge standard, allows a court to consider the circumstances surrounding the transaction to determine whether the transferee reasonably had no actual knowledge concerning a creditor, or was purposefully turning a blind eye to relevant facts. *See id.*

Appellant argues that the inadequate notice they received did not address these concerns of the Act. Because the list omitted the amount of the debt owed to Barclays and the notice inadequately detailed the amount of outstanding debt by omitting the amount of floor plan financing debt (which geometrically exceeded the amount of any other debt and which exceeded the purchase price), its evaluation of the transaction indicated that the proceeds from the sale would provide sufficient funds to allow *all* debt of the transferor to be paid. Accordingly, it took no action to prevent the transaction or to protect its interests—action it would have taken if the notice had been adequate.

' The substance of Blanken's argument rests on the language of Section 55–6–104. He argues that BS & T has not produced any evidence that Blanken had actual knowledge of the amount of the debt owed to Barclays. He maintains that responsibility for providing the transferee with an accurate list of creditors is on the transferor-Scotts, and he had no duty to independently ascertain its accuracy. In support of this argument, Blanken indicates that New Mexico has refused to adopt U.C.C. Optional Section 6–106 (1977) of the Model UCC Bulk Transfer Act that would have placed the burden on the transferee to guarantee that proceeds from bulk sales are paid to creditors. *See Uniform Commercial Code* § 6–106, 2A U.L.A. 311 (1977) (Supp.1990).

Section 55–6–104(2) requires that the amount of debt owed to any creditor must be listed when the amount is known. In Blanken's answer brief, he contends he testified in his affidavit "that the amount of floor plan and repossession financing debt changes from day to day and that, accordingly, the amounts owed pursuant to such financing arrangements is [sic] not capable of precise determination." Thus, Blanken admittedly had notice that Barclays was a creditor, and this statement indicates that he had knowledge of the relative size of the debt. Blanken contends that BS & T was required to present admissible evidence of his actual knowledge of the *precise* amount of debt to overcome the motion. This burden, however, would be too exacting. He may not have had knowledge of the exact amount of the debt, but we find that to be irrelevant.[3]

■■■ When the notice requirement is considered within the context of the UCC's good faith requirement and the policy of the Act to protect against fraud, at least an approximation of the debt must be on the

---

**3.** Blanken's argument that, because the exact amount of the debt was incapable of precise determination, he had no duty to include it in the list is weakened by his inclusion of *approxi-* *mate* amounts for other floor plan financing creditors, and especially by his approximation of the *interest* owed to Barclays on the floor plan financing.

list when the debt is of such magnitude compared to the transaction and under these circumstances. In a situation such as presented by this case, the transferee is required to present a reasonable estimate of the debt, if known, and cannot hide behind the claim that the exact amount of the debt was unascertainable. Debt is fluid and constantly changes as interest accrues and payments are made. Yet, the Act requires that amounts be stated, and that can only mean an amount that is reasonably accurate and ascertainable. The foregoing constitutes circumstantial evidence of his actual knowledge, and more is not required to get past a motion for summary judgment. *See* SCRA 1986, 13–308. Because this appeal is from a grant of summary judgment, we examine the record only to see if genuine controversy exists as to a material fact. *See Gardner–Zemke Co. v. State*, 109 N.M. 729, 790 P.2d 1010 (1990). We hold that a material issue of fact does exist regarding Blanken's knowledge of the estimated amount of debt owed to Barclays and that summary judgment was inappropriate.

The deficiency in the notice is exacerbated by the mischaracterization of the total debt as $495,000 when the actual debt exceeded a million dollars. BS & T reasonably could have relied on this estimate to its detriment when it determined that no action was necessary to protect its interests. In addition to the general policy of the Act and the requirement of Section 55–6–104 that the debt must be listed, when known, Section 55–6–106(1)(a) and (c) require that the *estimated* total of the transferor's debt must be included in the notice as well as the amount of debt to be paid by the transfer. It is uncontested that Blanken knew of the existence of the debt—he argues only that it was not capable of precise ascertainment until the accounting was made at closing. There is certainly an issue of fact material to the cause of action raised whether Blanken had

sufficient knowledge of the amount of debt to include an estimate of it in the notice.[4]

Blanken has made no argument regarding this deficiency and has not addressed this claim of BS & T in his brief, although at oral argument he indicated that the notice to creditors expressly indicated that floor plan financing was to be assumed by him and was, therefore, not included in the notice of outstanding debt. A factual issue is raised regarding whether Blanken did in fact assume the floor plan debt. He claims that because he assumed the debt it was not improper to omit it from the estimated total. It appears that he assumed a portion of it, but that a portion was also paid out of the proceeds of the transaction. The Act requires that the debt not assumed by the transferee be included in the notice, and a question of fact exists as to what portion of the debt should have been included in the estimate. We believe that an issue of fact regarding Blanken's actual knowledge is also raised by his agreeing to assume the debt—it is reasonable that having agreed to assume it he ascertained the amount.

At oral argument, Blanken also stated that part of the floor plan debt was backed by a mortgage held by Barclays on the real property of the dealership; this creates an issue of fact regarding Blanken's contention that the amount of debt was not listed because it was not ascertainable. At least, the amount upon which the mortgage was obtained may have been ascertainable.

In *Cullen Distributing, Inc. v. Petty*, 164 Ill.App.3d 313, 115 Ill.Dec. 322, 517 N.E.2d 733 (1987), the court considered the effect on the transaction of the use of the short notice form, which is appropriate when all debts will be payable as a result of the transaction, rather than the long form, which must be used if debts will not be payable when due. In other words, as in the case before us, the creditor received notice of the transaction through compliance with the Act, but the notice was im-

---

4. This case as presented does not require us to determine whether the level of knowledge assigned to the transferee under the notice requirements of Sections 55–6–106 and 55–6–107 differs from the actual knowledge requirement of Section 55–6–104, and we express no opinion on that question.

proper and ineffective because, rather than giving the creditor warning that steps may have been necessary to protect its interests, the notice lulled the creditor into a false sense of security. It gave the appearance that debts would be payable out of the proceeds of the transaction and induced the creditor to sit passively by. In *Cullen,* it appears that the transferee did not have actual knowledge that the transferor would not be able to pay the debts as they came due, but it did have knowledge of the circumstances—the general amount of debt owed, that the proceeds from the transaction would be insufficient to pay all existing debts, and that the transferor had no employment—to have raised doubts in the transferee's mind about the propriety of the short form. In essence, the court determined that a transferee cannot turn a blind eye to the circumstances surrounding the transaction to the detriment of creditors, and we believe that principle regarding sufficiency of notice applies to this case.

## II

BS & T contends that Blanken did not act in accordance with the terms of the purchase agreement because the notice, and mutual release and settlement agreement with Barclays stated that Blanken would assume the floor plan financing, and Scotts in fact paid Barclays out of the proceeds. Blanken responds that he was not a party to the mutual release, that a breach of the release was not a breach of the purchase agreement, and that Blanken did assume the floor plan financing. We find, however, that these circumstances raise a material issue of fact. A question exists regarding who paid Barclays—was it Scotts or Blanken? If Blanken did assume the debt, what does the amount paid by Scotts to Barclays represent? Why was it not included on the notice or in the estimated debt, and was it known to Blanken? These factual issues make summary judgment inappropriate.[5]

---

**5.** Although BS & T has not demonstrated how it is a third-party beneficiary of the contract between Blanken and Scotts, Blanken has not argued that BS & T was not a third-party benefi-

## III

The remaining issue is whether a material question of fact regarding fraud is raised. Blanken states that no admissible evidence creating a reasonable doubt as to an intent to deceive or knowledge of a misrepresentation of fact has been presented. *See Cargill v. Sherrod,* 96 N.M. 431, 631 P.2d 726 (1981). The deficiencies in the notice and discrepancies in the purchase agreement, as discussed previously, raise questions regarding what Blanken knew and when, and whether the deficiencies in the notice regarding the omissions and misstatement of debt were made with the intent to defraud Scotts' creditors.

Accordingly, we conclude that summary judgment was inappropriate. We REVERSE the judgment of the district court and REMAND for trial in accordance with this opinion.

IT IS SO ORDERED.

RANSOM and MONTGOMERY, JJ., concur.

---

ciary, and we express no opinion on this issue because of the procedural posture in which this case has arrived before us.