1997-NMCA-043

940 P.2d 195

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Lee Mike SALAZAR, Defendant– Appellant.**

**No. 16977.**

Court of Appeals of New Mexico.

April 16, 1997.

Tom Udall, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Armando Torres, Thomas C. Garde, Torres & Garde, Los Lunas, for Defendant–Appellant.

*OPINION*

BUSTAMANTE, Judge.

1. Defendant appeals his convictions of unlawful carrying of a deadly weapon on school grounds and negligent use of a deadly weapon. He raises three issues on appeal: (1) trial court error in denying a motion to exclude evidence regarding the Raven pistol found in Defendant's vehicle; (2) trial court error in denying the motion to dismiss the indictment; and (3) insufficiency of the evidence to support the conviction for carrying a deadly weapon on school grounds. Finding no error and finding sufficient evidence to support the convictions, we affirm.

*FACTS*

2. Defendant was at Los Lunas High School waiting for night classes to begin when he was approached by a friend, Andrew Aragon, who asked Defendant to hold a gun for him. Defendant apparently agreed reluctantly and followed Andrew to his vehicle, which was parked next to Defendant's vehicle in the school parking lot. Andrew got into his vehicle, sitting in the driver's seat. Also in the vehicle were Juan Lopez, sitting in the front passenger seat and two others in the back seat. Andrew produced the gun, an FIE Titan .25 caliber pistol (Titan), from under his seat. He asked Defendant if he had something to hide it in. Defendant then went to his vehicle, unlocked the trunk and removed a black glove. He returned to Andrew's vehicle and took the gun. There was testimony that Defendant removed the clip and dry fired the gun. Then he handed it back to Andrew who passed it around to the passengers in the vehicle. When the gun made its way back to Andrew, he handed it to Defendant. During that exchange, the gun went off, and Juan was hit in the chest. Defendant dropped the glove and gun onto Andrew's lap and went into the school. Juan, who had jumped out of the vehicle when he was shot, was forced back into the vehicle and Andrew drove away. Andrew drove to the Los Lunas Police Department for medical attention for Juan. On the way there, Andrew threw the gun and glove into some weeds by a restaurant.

3. At the police station, Juan was given medical attention, but he died. The police took statements from all the young men in Andrew's vehicle. Based on those statements, the police recovered the gun and glove from near the restaurant. They also located the scene of the shooting, collected evidence and impounded Defendant's vehicle. Pursuant to a search warrant, Defendant's vehicle was searched. While searching the vehicle, officers discovered a Raven .25 caliber pistol (Raven), which was wrapped in a black glove and located in the trunk of Defendant's vehicle. The Raven was not connected to the shooting.

4. The police initially could not locate Defendant as he had left school, but later that day Defendant turned himself in. Defendant was arrested and charged with an open count of murder. Defendant was indicted by a grand jury on charges of second degree murder, carrying a deadly weapon on school grounds, negligent use of a deadly weapon, and shooting at an inhabited dwelling.

5. At trial, Defendant moved to exclude evidence of the Raven, arguing that it was not relevant to the charges and was being presented only to prejudice the jury against him. The State argued that the Raven was evidence of carrying a deadly weapon on school grounds and was, therefore, relevant. The trial court denied the motion in limine. Defendant then moved to dismiss the indictment, since it was not clear which gun supported the charge of carrying a deadly weapon on school grounds and thus, the charge was not specific enough for him to defend. The trial court denied the motion. Prior to trial, the State dismissed the charge of shooting at an inhabited dwelling. After the State's presentation of its case, the trial court directed a verdict on second degree murder, reducing the charge to involuntary manslaughter. Defendant was convicted of carrying a deadly weapon on school grounds and negligent use of a deadly weapon. The jury was deadlocked on the manslaughter charge and the trial court declared a mistrial on that charge.

*DISCUSSION*

6. All of Defendant's issues concern the Raven, which was found in the trunk of his vehicle after the shooting. He argues that the trial court erred in refusing to exclude evidence of the Raven. We review the admission or exclusion of evidence for abuse of discretion. *State v. Woodward,* 121 N.M. 1, 4, 908 P.2d 231, 234 (1995). An abuse of discretion sufficient to reverse an evidentiary ruling "occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* We cannot say that the trial court abused its discretion unless we can characterize the trial court's ruling as not justified by reason. *Id.*

7. Here, Defendant sought to exclude evidence of the Raven because he contended it was not relevant to any of the charges. It is clear, however, that the Raven was being used by the State to support the charge of unlawful carrying of a deadly weapon on school premises. Defendant argues it could not be so used because, as a matter of law, he was not "carrying" the Raven. We disagree. As we will shortly discuss, whether or not he was "carrying" the Raven is a question of fact to be determined by the jury.

8. The crime of unlawful carrying of a deadly weapon on school grounds consists of carrying a deadly weapon on school premises. "School premises" includes school buildings and grounds, including playgrounds, playing fields and parking areas of high schools, among others. NMSA 1978, § 30–7–2.1(B)(1) (Repl. Pamp. 1994). "Carrying a deadly weapon" is defined by statute as "being armed with a deadly weapon by having it on the person, or in close proximity thereto, so that the weapon is readily accessible for use." NMSA 1978, § 30–7–1 (Repl. Pamp. 1994). The State urges this Court to adopt a definition different from the statutory definition of "carrying a deadly weapon" in cases involving deadly weapons on school grounds. We perceive no legislative intent to impose a different definition, and no need for one, and therefore decline to do so.

9. While there is some attraction to the State's argument that "carrying" should have a broader meaning in connection with the crime of carrying a deadly weapon on school grounds, there is no indication of legislative intent to make it so. The legislature defined

carrying a deadly weapon in 1953 in connection with a statute making it a crime to carry a concealed weapon. There has been no change in that definition since, and the legislature used the same words in the later statute declaring it a crime to carry a deadly weapon on school grounds. We believe the legislature intended that its definition of carrying a deadly weapon would apply to all statutes making it a crime to carry a deadly weapon, whether concealed or on school premises. *See Doe v. State ex rel. Governor's Organized Crime Prevention Comm'n*, 114 N.M. 78, 80, 835 P.2d 76, 78 (1992) (legislature is presumed to know about existing laws and cannot be inferred to have enacted a law inconsistent with an existing law).

■ 10. Applying the statutory definition, whether Defendant was "carrying" the Raven depends upon whether it was readily accessible for use. Whether a weapon is readily accessible for use is a question for the fact finder to determine based on the evidence presented. *See Dubin v. State*, 397 A.2d 132, 134 (Del.1979); *Leith v. Commonwealth*, 17 Va.App. 620, 440 S.E.2d 152, 153 (1994); *cf. State v. Padilla*, 122 N.M. 92, 95, 920 P.2d 1046, 1049 (Ct.App.) (discussing similar analysis for determining when one is "armed" with a deadly weapon), *cert. denied*, 122 N.M. 1, 919 P.2d 409 (1996). Thus, whether or not Defendant was "carrying" the Raven is a factual matter to be determined by the jury. Evidence regarding the Raven was properly admitted because it would be relevant to the carrying charge. *See NMRA* 1997, 11–402 (all relevant evidence is admissible).

■ 11. Defendant argues that the indictment was defective because it did not inform him which gun he was charged with carrying. An indictment must apprise the defendant of the nature of the charges so as to permit the preparation of a defense and bar double jeopardy by a subsequent prosecution. *State v. Johnson*, 105 N.M. 63, 67, 728 P.2d 473, 477 (Ct.App.1986). Relying on *State v. Foster*, 87 N.M. 155, 157, 530 P.2d 949, 951 (Ct.App.1974), Defendant asserts that because he did not know which gun was the basis of the indictment, he was unable to

prepare his defense. Unlike the defendant in *Foster*, however, Defendant in this case had notice of a specific date as well as notice of the evidence of both guns.

12. The facts of this case are more analogous to the situation in *State v. Gurule*, 90 N.M. 87, 91, 559 P.2d 1214, 1218 (Ct.App. 1977), where the State was allowed to rely on each of seventeen instances of conduct amounting to the one offense charged in the indictment. In *Gurule*, this Court determined that the defendant had sufficient notice of the crime charged and upheld his conviction despite the defendant's arguments that it could not be determined on what basis the jury reached its verdict and that the state had failed to prove all the instances relied upon. Likewise, in this case, we affirm the trial court's refusal to dismiss the indictment, as Defendant had notice of the charge against him and knew that both guns would be used as evidence of the charge.

■ 13. Finally, Defendant argues that there was insufficient evidence to support the conviction for carrying a deadly weapon on school grounds. This is based on two contentions: (1) that the facts and circumstances surrounding the Raven were insufficient to support a conviction for carrying a deadly weapon, and (2) that the unanimity of the jury's verdict is suspect since the jury was not instructed to be unanimous about which gun supported the "carrying" charge.

■ 14. In reviewing a claim of insufficiency of the evidence, this Court views the evidence in the light most favorable to support the verdict and resolves all conflicts and indulges all inferences in favor of upholding the verdict. *State v. Rivera*, 115 N.M. 424, 429, 853 P.2d 126, 131 (Ct.App.1993). We defer to the facts found at trial and determine if any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994). As we pointed out above, the question regarding whether or not Defendant was "carrying" the Raven depends on facts showing that the weapon was readily accessible for use. Thus, the jury had to determine whether the evidence established beyond a reasonable doubt that

Defendant had the Raven nearby, readily capable of being put into action. *See Rivera,* 115 N.M. at 429, 853 P.2d at 131.

15. The testimony established that the Raven was located in the trunk of Defendant's vehicle. He had placed it there several months before, after it was given to him by a friend to hold. The gun was wrapped in a black glove, apparently the mate to the glove he was going to use for the Titan. The magazine was still in the gun when it was found. There was conflicting testimony regarding the location of the gun in the trunk. One of the officers present during the search indicated that photos were taken at the time of the search and that those photos showed the gun was simply wrapped in a black glove and placed in the trunk. Defendant testified to the contrary, that the Raven was hidden under the carpet in the trunk and could not be seen by merely opening the trunk. He argues, therefore, that it was not readily accessible for use. We disagree. We believe a reasonable jury could find that the gun was readily accessible for use because it was loaded, and it was located in a place where Defendant could easily get it. Further, Defendant testified he opened the trunk and retrieved the glove used to wrap the Titan. At that point, the Raven was close at hand and could have easily been retrieved and put to use, even if it was hidden under the trunk's lining. Thus, there was evidence from which a reasonable jury could find that the Raven was readily accessible to Defendant. The evidence was thus sufficient to establish that Defendant carried the Raven onto school premises.

16. With regard to the Titan, Defendant's own testimony established that he was holding it before it went off. Thus, there was evidence that he had the Titan on his person in the school parking lot. This was evidence sufficient to show that he carried the Titan on school premises. *See* § 30–7–1 (carrying a deadly weapon is having it on the person).

17. Defendant argues that because the jury was given a choice regarding which gun supported the charge of carrying a deadly weapon on school grounds, we cannot be sure that the verdict was unanimous.

In other words, the verdict could have been the result of a split decision based on either weapon but not necessarily a unanimous decision based on any one weapon. We cannot agree. When the jury is instructed that its verdict must be unanimous and the jury indicates that its verdict is unanimous, a conviction will be upheld unless there is some reason to assume the verdict is not unanimous. *State v. Cavanaugh,* 116 N.M. 826, 831, 867 P.2d 1208, 1213 (Ct.App.1993). There is no basis in this case to make such an assumption. Further, Defendant made no request that the jury be instructed to be unanimous regarding the manner in which the crime was committed, that is, which gun was carried. Without making such a request, he cannot complain here about a lack of unanimity. *See id.*

18. Moreover, the general rule appears to be that a defendant is not entitled to a unanimous verdict on the precise manner in which the crime was committed, or by one of several alternative methods or modes, or under any one interpretation of the evidence, so long as there is substantial evidence to support each of the methods, manners and modes charged. *See State v. Russell,* 733 P.2d 162, 165 (Utah 1987); *see also State v. Altgilbers,* 109 N.M. 453, 471, 786 P.2d 680, 698 (Ct.App.1989). Defendant's argument regarding jury unanimity assumes there was insufficient evidence to support a conviction based on the Raven. Because we have found that there was sufficient evidence to support a conviction based on the Raven, we do not believe there is any merit to Defendant's claim that the jury verdict was not unanimous.

19. Defendant's convictions for carrying a deadly weapon on school grounds and negligent use of a firearm are affirmed.

20. **IT IS SO ORDERED.**

FLORES and BOSSON, JJ., concur.