2000-NMCA-010

996 P.2d 911

Paul C. DURHAM and Gary L. Peterson, Partners of Southwest Developers Joint Venture, Plaintiffs–Appellants,

v.

SOUTHWEST DEVELOPERS JOINT VENTURE, and Jack McLaughlin, Managing Partner of Southwest Developers Joint Venture, Defendants–Appellees.

Paul C. Durham and Gary L. Peterson, Individually and as Partners of Southwest Developers Joint Venture, and as Shareholders of Motel Mania, Inc., a New Mexico Corporation, Plaintiffs–Appellants,

v.

Southwest Developers Joint Venture, a New Mexico Partnership General; and Motel Mania, Inc., a New Mexico Corporation; and Claire McLaughlin, Individually and as Officer and Director of Motel Mania, Inc.; and H. John Underwood; and Richard M. Mounds; and Richard Arlaud, Individually and as Officer and Director of Motel Mania, Inc. and of Southwest Developers Joint Venture, Defendants–Appellees.

Nos. 19,651, 19,860.

Court of Appeals of New Mexico.

Dec. 3, 1999.

Jo Anne Holland, The Holland Law Office, John V. Nilan, John V. Nilan, P.C., Albuquerque, for Appellants.

Mel B. O'Reilly, Mel B. O'Reilly Law Offices, Albuquerque, for Appellees Jack McLaughlin, Southwest Developers Joint Venture, Claire McLaughlin, Richard Arlaud, and Motel Mania, Inc.

S. Thomas Overstreet, Overstreet & Associates, P.C., Alamogordo, for Appellee H. John Underwood.

Gerald G. Dixon, Sharp, Jarmie, Dixon, Scholl & Bailey, P.A., Albuquerque, for Appellee Richard M. Mounds.

## OPINION

DONNELLY, Judge.

{1}   Plaintiffs Paul C. Durham and Gary L. Peterson appeal from orders dismissing two lawsuits brought by them arising out of a joint venture to build and operate a motel. Because the factual predicate for the two actions arose out of related matters, the two appeals were consolidated by this Court. Plaintiffs raise numerous issues on appeal, which we combine and discuss as follows: (1) whether the trial courts erred in ruling that Plaintiffs' claims were barred by the statute of limitations, and (2) whether the trial court in the second lawsuit erred in awarding summary judgment. For the reasons discussed herein, we affirm in part and reverse in part.

### FACTS AND PROCEDURAL POSTURE

{2}   On February 28, 1983, Plaintiffs, together with Jack McLaughlin and Brad Wentworth, entered into an agreement to form a joint venture, denominated Southwest Developers Joint Venture, in order to acquire land and to construct and operate a motel in Ruidoso, New Mexico. The terms and provisions of the joint venture agreement were detailed in a sixteen-page instrument. The agreement provided, among other things, that any default on the part of any partner would allow any other partner, who held at least a 50% interest in the joint venture, the right to terminate the interest of the defaulting partner. It also provided that if the default was not cured, the remaining partners could elect to purchase, on a pro-rata basis, the interest of the defaulting venturer. A filing of a petition under any section of the National Bankruptcy Act was expressly declared to be an event causing a default on the part of a partner.

{3}   On November 23, 1983, the written agreement was modified to designate McLaughlin as the managing partner. In March 1984 the parties again amended the joint venture agreement to provide that McLaughlin would replace Wentworth as the managing partner, that McLaughlin would

have a 51% interest in the partnership, and that each of the other partners would own a 16 ⅙% interest in the partnership. The joint venture agreement was also amended so as to delete, among other things, a provision that the joint venture would be dissolved upon the "[a]djudication of a Venturer as a bankrupt or insolvent in proceedings filed against the Venturer under any section or chapter of the National Bankruptcy Act, as amended . : . ."

{4} The partners secured land upon which to build the motel and obtained an interim construction loan from Pioneer Savings and Trust. The loan was secured by a note and mortgage in the amount of $1,000,-000. Plaintiffs, together with McLaughlin, each signed the Pioneer Savings and Trust notes. Durham made an initial capital contribution to the partnership in the amount of $55,000. Both Durham and Peterson also contributed labor and skill in constructing the motel.

{5} On December 17, 1984, Durham filed for bankruptcy under Chapter 11. The bankruptcy proceedings which ensued were protracted and complex. The initial petition was converted to a Chapter 7 proceeding by an order of conversion filed June 30, 1986. The list of assets contained in Durham's bankruptcy petition included his partnership interest in the motel. Following the appointment of a trustee, an order of dismissal in the bankruptcy proceedings was filed on August 6, 1986. An order setting aside the dismissal was entered October 30, 1989, and Durham was ultimately discharged in bankruptcy on July 9, 1993.

{6} Meanwhile, on May 27, 1988, the partners formed Motel Mania, Inc., a New Mexico corporation. The assets of the partnership were transferred to the corporation and each of the partners was issued shares of stock in the corporation. Peterson was divorced on March 22, 1989, in Denton County, Texas. Under the terms of the final decree of divorce, Peterson's ex-wife was awarded 164 shares of the common stock of Motel Mania, Inc.

{7} On June 26, 1991, Defendant H. John Underwood, acting as counsel for the newly formed corporation, wrote to McLaughlin, Peterson, and Durham, the corporate shareholders, and informed them that "capital payments ... were due from each of the shareholders ... [and that] [t]o date the only amount received has been $31,417.63 from Jack McLaughlin." The letter stated, in part, that the following amounts were due from the shareholders: "Jack McLaughlin $8,536.14; Paul Durham $43,522.70; [and] Gary Peterson $37,570.36," and that "[t]he above amounts must be paid in full to the corporation on or before July 31, 1991 or your stock will be forfeited for nonpayment."

{8} Plaintiffs did not pay the requested amounts and were subsequently notified that their interests in the corporation had been forfeited. McLaughlin and Claire McLaughlin, his wife, subsequently assumed the sole management of the corporation. Through the efforts of McLaughlin, the corporation obtained permanent refinancing from the First National Bank of Ruidoso.

{9} On November 15, 1993, Durham filed a lawsuit in the District Court of Lincoln County, Cause No. CV-93-182 (first lawsuit), seeking an accounting against Southwest Developers Joint Venture and McLaughlin. Peterson subsequently joined with Durham, as a plaintiff, in an amended complaint against the joint venture and McLaughlin, as managing partner. The amended complaint also sought an accounting and asserted a separate count alleging that McLaughlin breached the fiduciary duty he owed to Plaintiffs and committed fraud. The first lawsuit was assigned to District Judge Frank K. Wilson. Defendants denied the allegations of the amended complaint and McLaughlin filed a motion to dismiss Durham's claims. Plaintiffs also filed a motion for partial summary judgment requesting that the trial court order McLaughlin to recognize Plaintiffs' ownership rights, to furnish information, and to share any past and future profits.

{10} On February 7, 1996, the trial court dismissed Plaintiffs' request for an accounting, but reserved ruling on the other claims. Plaintiffs filed a second amended complaint and sought to add additional parties as defendants. Defendants filed a motion to dismiss and a motion for summary judgment.

The motions to dismiss and for summary judgment asserted, among other things, that Plaintiffs' claims were barred by the statute of limitations.

{11} Thereafter, on February 2, 1998, while claims were still pending in the first lawsuit, Plaintiffs filed a new action (second lawsuit) in the District Court of Lincoln County, Cause No. CV–98–22, against Southwest Developers Joint Venture; Motel Mania, Inc.; Claire McLaughlin: H. John Underwood, the attorney for the corporation; Richard Mounds, a certified public accountant for the corporation; and Richard Arlaud, a director of Motel Mania, Inc. The second lawsuit was assigned to District Judge Karen L. Parsons. The second lawsuit sought an accounting and damages resulting from an alleged breach of contract, breach of fiduciary duty, violation of the New Mexico Partnership Act, constructive trust, and fraud. Thereafter, Defendants moved to dismiss the second lawsuit.

{12} On July 21, 1998, Judge Wilson granted Defendants' motion for summary judgment on Plaintiffs' second amended complaint in the first lawsuit. The trial court found that "Durham's claims for an accounting accrued ... when he filed Chapter 11 bankruptcy, and no later than 1986, when it was converted to Chapter 7," and that the other relief sought by Durham "is derivative from his claim for accounting and is barred by the Statute of Limitations, Sections 37–1–3 NMSA 1978 Comp."

{13} The trial court further held that "[t]here is no genuine issue of material fact as to ... Peterson's claims," that his transfer of stock in Motel Mania, Inc., "was a prohibited transfer under the Joint Venture Agreement and gave rise to Defendant McLaughlin's right to repurchase Peterson's interest at book value." Additionally, the trial court determined that Peterson's interest in the partnership "on the date of divorce was less than zero" because he owed money to the joint venture.

{14} On September 23, 1998, Judge Parsons granted Defendants' motion for summary judgment, thus dismissing the second lawsuit. The trial court held that each of Plaintiffs' causes of action were barred by the running of the statute of limitations, which expired on January 14, 1998, and that Plaintiffs knew of the alleged accounting irregularities and the facts which may have supported their allegations of conspiracy, fraud, breach of fiduciary duty, and constructive trust.

{15} Plaintiffs filed a timely appeal from both orders dismissing their two lawsuits.

## DISCUSSION

### I. *Application of Statute of Limitations*

■ {16} Plaintiffs contend the trial courts in the first and second lawsuits erred in determining that the statute of limitations barred their causes of action for an accounting of the partnership assets. Pointing to the November 23, 1983, amendment of the joint venture agreement, Plaintiffs contend that the joint venture was never dissolved due to the bankruptcy proceedings initiated by Durham, because the parties are free to contract among themselves and an amendment to the joint venture agreement expressly deleted the provision that the filing of a petition for bankruptcy by a joint venturer would constitute an act which would result in dissolution of the joint venture. They argue that the Legislature, in enacting the Uniform Partnership Act (UPA) and NMSA 1978, § 54–1–18 (1947, as amended in 1995), expressly provided that the rights and duties of partners in relation to the partnership are determined "subject to any agreement between them," and permitted the partners to agree among themselves that bankruptcy of a partner would not constitute a basis for dissolution.

{17} Replying to this argument, Defendants assert that under the version of the UPA enacted by our Legislature, bankruptcy of a partner is expressly declared to be an event which triggers a dissolution of the partnership.[1] Thus, Defendants reason that

---

1. The New Mexico Uniform Partnership Act, NMSA 1978, §§ 54–1–1 to –48 (1947, effective until 1997) was repealed by 1996 N.M. Laws, ch. 53, § 1004, effective July 1, 1997, and was replaced by a new revised UPA, NMSA 1978, §§ 54–1A–101 to –1005 (1996, effective July 1, 1997). The events involved in these consolidated cases occurred prior to the enactment of the

events that trigger the dissolution of a partnership are controlled by the provisions of the UPA and not by agreement of the parties or the provisions of the joint venture agreement. Defendants also assert that when the agreement is silent regarding the effect of bankruptcy (as it is here because the provision regarding bankruptcy was amended out), the UPA controls. We agree.

{18} A joint venture is a partnership "to carry out a single business enterprise for profit." *Institutional Management Corp. v. Translation Sys., Inc.*, 456 F.Supp. 661, 664 (D.Md.1978). Partners are not free to ignore existing state law. *See Vose v. Rhode Island Bhd. of Correctional Officers*, 587 A.2d 913, 914 (R.I.1991); *see also Finkelstein v. Security Properties, Inc.*, 76 Wash. App. 733, 888 P.2d 161, 166 (1995) (rejecting argument that state statute providing that dissolution is caused by bankruptcy of a partner is superseded by Bankruptcy Code). The provisions of applicable statutes are part of every contractual commitment. *See Wright v. Union Cent. Life Ins. Co.*, 304 U.S. 502, 516, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938). Thus, contractual agreements are deemed to have incorporated relevant state law. *See State ex rel. Udall v. Colonial Penn Ins. Co.*, 112 N.M. 123, 130, 812 P.2d 777, 784 (1991).

{19} We turn next to a consideration of whether the statute of limitations for the right to an accounting was triggered at the time Durham filed his initial petition for bankruptcy on December 17, 1984. Plaintiffs argue that Durham's act of filing for bankruptcy did not automatically cause a dissolution of the joint venture. We find this argument unpersuasive. As observed above, Section 54–1–31(E) expressly provides that the bankruptcy of a partner is an event which triggers the dissolution of a partnership. Dissolution, however, is not synonymous with termination. *See Cutler v. Cutler (In re Cutler)*, 165 B.R. 275, 278 (Bankr. D.Ariz.1994). Dissolution means the partnership as it previously existed no longer continues to exist and the affairs of the partnership are subject to being wound up. *See* § 54–1–29; *see also In re Sunset Developers*, 69 B.R. 710, 712 (Bankr.D.Idaho 1987).

{20} The judgment dismissing Plaintiffs' claims for an accounting entered by Judge Wilson in the first lawsuit found, among other things, that "Durham's claims for an accounting accrued pursuant to Sections 54–1–31 E and 54–1–43, NMSA 1978 Comp. in 1984 when he filed Chapter 11 bankruptcy, and no later than 1986, when it was converted to Chapter 7." The judgment dismissing Plaintiffs' claims in the second lawsuit entered by Judge Parsons contained a similar finding.

{21} Under Section 54–1–43, in effect at the time Durham filed his petition for bankruptcy, the statute provided that "[t]he right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners ... or the person or partnership continuing the business, *at the date of dissolution, in the absence of any agreement to the contrary.*" (Emphasis added.)

{22} Nothing in the joint venture agreement or the amendments thereto, indicates an agreement to defer the right of any of the joint venturers to an accounting in the event of *dissolution.* Defendants contend that in light of the provisions of Sections 54–1–31(E) and 54–1–43, and because Durham filed his initial petition for an accounting on November 15, 1993, more than six years after the dissolution of the partnership, the trial courts in the first and second lawsuits correctly determined that Durham's claims for an accounting were barred by the six-year statute of limitation set forth in NMSA 1978, § 37–1–3 (1975).[2] *Cf. Fidel v. Fidel*, 87 N.M. 283, 285–86, 532 P.2d 579, 581–82 (1975) (determining that six-year statute of limitation relating to written contracts was applicable to actions for accounting). We agree.

{23} Durham, in an effort to avoid the effect of these rulings, argues that notwithstanding the language of Section 54–1–31(E),

---

revised UPA. Section 54–1–31(E) provides, in applicable part, that "[d]issolution is caused ... by the bankruptcy of any partner or partnership."

**2.** NMSA 1978, § 37–1–1 (1880) and § 37–1–3 provide that actions founded upon a written contract are barred unless brought within six years.

this Court should follow the approach of courts which have held that dissolution of a partnership does not occur when a partner files a petition for reorganization under Chapter 11. He argues that, unlike the situation which results following a filing of a petition for bankruptcy under Chapter 7 of the Federal Bankruptcy Act, dissolution does not occur when there is a filing under Chapter 11. *See, e.g., In re Hawkins,* 113 B.R. 315, 316 (Bankr.N.D.Tex.1990); *In re Priestley,* 93 B.R. 253, 262 n. 9 (Bankr.D.N.M.1988) (applying federal law); *In re Corky Foods Corp.,* 85 B.R. 903, 904 (Bankr.S.D.Fla.1988); *In re Safren,* 65 B.R. 566, 569 (Bankr. C.D.Cal.1986); *see also* Sarah C. Lichtenstein, *Does General Partner's Bankruptcy Dissolve the Partnership?,* N.Y.L.J. Vol. 214, No. 95 (1995). *But see Siegal v. Siegal (In re Siegal),* 190 B.R. 639, 641–42 (Bankr. D.Ariz.1996) (dissolution of partnership is caused by filing of bankruptcy by partner, irrespective of whether filing was under Chapter 11 or Chapter 7); *Coin Phones, Inc. v. GTE Supply & GTE Leasing Corp. (In re Coin Phones, Inc.),* 153 B.R. 135, 142 (Bankr. S.D.N.Y.1993); *Stickney v. Kerry,* 55 Wash.2d 535, 348 P.2d 655, 656 (1960). We are not persuaded by this argument.

{24} We construe the term "bankruptcy" as used in Section 54–1–31(E), to apply to either a filing of bankruptcy under Chapter 7 or under Chapter 11 of the Federal Bankruptcy Act, and reject the rationale applied by the court in *In re Safren.* Therein, the bankruptcy court held that because the UPA was promulgated by the National Conference of Commissioners on Uniform State Laws in 1914 and at that time the Federal Bankruptcy Act only recognized a type of bankruptcy presently contained in Chapter 7, "bankruptcy" as used in the UPA does not include reorganization under Chapter 11. The court further observed that "[r]eorganization was first introduced into the Bankruptcy Code in 1933, in the middle of the Great Depression, when Congress added section 77 to the Bankruptcy Act to permit the reorganization of railroads[, and] that [i]n 1934 Congress authorized corporate reorganization ... [and this was subsequently] expanded into Chapters X through XIII in

the Chandler Act of 1938." *In re Safren,* 65 B.R. at 569 (citations omitted).

{25} Other courts, however, have interpreted the term "bankruptcy" as used in the UPA more expansively. For example, in *Siegal,* 190 B.R. at 641–42, the court held that the Arizona Legislature adopted that state's version of the UPA subsequent to the time Congress amended the Federal Bankruptcy Act permitting debtors to file for reorganization under Chapter 11. Thus, the court held that the term "bankruptcy," as utilized by the Arizona Legislature in its enactment of the UPA, included both types of bankruptcies. *See id.* at 642. Similarly, we conclude that since New Mexico's version of the UPA was adopted by our Legislature in 1947, subsequent to the 1938 congressional amendments to the Federal Bankruptcy Act which added Chapter 11 to the type of bankruptcy an individual debtor may pursue, that our Legislature intended the term "bankruptcy" to refer to all types of bankruptcy then authorized by Congress. *See State v. Salazar,* 1997–NMCA–043, ¶ 9, 123 N.M. 347, 940 P.2d 195 (stating that Legislature is presumed to know existing law). Moreover, even if we were to assume, arguendo, that Plaintiffs' argument that dissolution of the joint venture did not occur until June 30, 1986, when the bankruptcy court converted the Chapter 11 bankruptcy to a Chapter 7 petition, the six-year statute of limitations would have expired as to Durham's claims for an accounting under Sections 37–1–1 and –3 prior to the filing of suit in the first lawsuit on November 15, 1993.

{26} Next, Plaintiffs assert that no dissolution of the joint venture in fact occurred because McLaughlin, acting in his capacity as managing partner, continued to conduct business of both the joint venture and the corporation as if there had been no dissolution. Plaintiffs contend this factor effectively continued the existence of the joint venture and preserved the status quo. Alternatively, Plaintiffs argue that even if Durham's filing of the petition for bankruptcy caused a dissolution, McLaughlin's actions in continuing the business of the joint venture gave rise to the creation of a new partnership at will with similar duties and obligations to

that spelled out in the prior agreement entered into by the parties. Additionally, Plaintiffs argue that because McLaughlin continued to operate the partnership instead of winding up the venture partnership, he should be estopped from raising the defense of statute of limitations. We find each of these arguments to be without merit.

{27} Absent a timely demand for an accounting or a winding up of the partnership, a partner who has not wrongfully caused the dissolution is not required to wind up the partnership business and may continue such enterprise so long as none of the partners asserts a timely demand for a winding up or termination. *See* § 54–1–38(B)(2). It was undisputed that Durham's bankruptcy petition declared his interest in the joint venture to have no value and that as between partners, the right to an accounting and the market value of the partners' interests were subject to determination as of the date of dissolution. *See Cave v. Cave,* 81 N.M. 797, 803, 474 P.2d 480, 486 (1970); *Watson v. Lunt,* 75 N.M. 734, 736, 410 P.2d 954, 955 (1966).

{28} Under Section 54–1–38(B)(2), McLaughlin had the right to continue the joint venture and to possess the motel property, subject to the duty to pay to Plaintiffs the value of their interest, if any, at the time of dissolution. Thus, the trial courts properly found that the filing of Durham's petition for bankruptcy caused the dissolution of the joint venture as provided in Section 54–1–31(E) of the UPA and triggered the running of the statute of limitations provided in Section 37–1–3 on Durham's action for an accounting. Because it is clear that Durham's right to an accounting accrued at least by the date of his conversion of his bankruptcy petition to a Chapter 7 filing on June 30, 1986, and more than six years expired prior to the time he filed suit on November 15, 1993, we conclude that the trial courts' orders in the first and second lawsuits dismissing Durham's petitions for an accounting under Sections 37–1–1 and –3 were proper.

II. *Propriety of Summary Judgment*

{29} Defendant McLaughlin filed a motion to dismiss Plaintiffs' claims in the first lawsuit. Similarly, Defendants Mounds; Southwest Developers Joint Venture; Motel Mania, Inc.; Claire McLaughlin; and Richard Arlaud filed motions to dismiss in the second lawsuit. The trial courts granted Defendants' motions. In reviewing the propriety of the courts' rulings below, we review the motions to dismiss as motions for summary judgment because they were supported by documentary evidence and other matters submitted outside the pleadings. *See Baptiste v. City of Las Cruces,* 115 N.M. 178, 179, 848 P.2d 1105, 1106 (Ct.App.1993).

{30} Plaintiffs argue that the trial courts in the actions below erred in granting summary judgment because the courts failed to permit complete discovery that would have permitted Plaintiffs to more fully develop their equitable arguments in opposition to Defendants' defense of statute of limitations. Plaintiffs argue that even if Durham's right to an accounting was foreclosed, factual issues existed concerning the date the statute of limitations began to run on their claims of fraud, breach of constructive trust, breach of contract, and violation of the UPA. They contend these issues involve separate and distinct claims which may be asserted independently of their right to an accounting.

{31} We think each of these arguments fails as to Durham. New Mexico follows the general rule that an action for a formal accounting is a prerequisite to initiating an action at law by a partner against the partnership or another partner. *See Willey v. Renner,* 8 N.M. 641, 646, 45 P. 1132, 1134 (1896) (holding "one partner can not [sic] maintain an action at law against another partner to recover an amount claimed by him by reason of partnership transactions until there has been a final settlement of the affairs of the partnership") (cited with approval in *Levy v. Disharoon,* 106 N.M. 699, 704, 749 P.2d 84, 89 (1988)).

{32} This general rule is discussed in 59A Am.Jur.2d *Partnership* § 542, at 513 (1987):

In the absence of statutory authority, partners ordinarily may not maintain actions at law among themselves, as opposed to equitable actions, where the subject of

the action relates to partnership transactions, *unless there is a prior accounting or settlement of the partnership affairs. This rule imposes conditions precedent to the right to maintain an action at law between partners concerning partnership matters, and applies not only to original actions but to partnership claims raised by way of setoff.*

(Footnotes omitted; emphasis added.) The principal rationale underlying the general rule discussed above is that disputes between partners over partnership assets ordinarily require an accounting because until an accounting is taken, it is virtually impossible to arrive at a complete settlement of the partnership accounts. *See Abbott v. Hurst,* 643 So.2d 589, 594 (Ala.1994); *see also Swift Bros. v. Swift & Sons, Inc.,* 921 F.Supp. 267, 272 (E.D.Pa.1995); *Stodd v. Goldberger,* 73 Cal.App.3d 827, 141 Cal.Rptr. 67, 73 (1977); *Lawrence St. Partners, Ltd. v. Lawrence St. Venturers,* 786 P.2d 508, 510 (Colo.Ct.App. 1989); *Jones v. Sageeyah Dev., Ltd.,* 833 P.2d 1235, 1237 (Okla.1992); *Winther v. Valley Ins. Co.,* 140 Or.App. 459, 915 P.2d 1050, 1053 n. 2 (1996). *See generally* 2 Alan R. Bromberg & Larry E. Ribstein, *Partnership* § 6.08(c), at 6:174 (1999); 68 C.J.S. *Partnership* § 108, at 313 (1998).

{33} Because we conclude that Durham's action for an accounting is barred by the statute of limitations and the timely filing of a claim for an accounting is a prerequisite to pursuing each of his other claims, we affirm the rulings of the trial courts below and their dismissal of each of Durham's claims.

{34} We turn next to the question of whether it was error to dismiss Peterson's claim for an accounting. The trial court in the first lawsuit did not find that Peterson's claim for an accounting was barred by the statute of limitations. Instead, the trial court granted summary judgment and dismissed Peterson's claims on the grounds that his "transfer to his ex-spouse was a prohibited transfer under the Joint Venture Agreement and gave rise to ... McLaughlin's right to repurchase Peterson's interest at book value." The trial court also determined that "[t]here is no genuine issue of material fact that Peterson's interest on the date of

divorce was less than zero, and that Peterson owed money to the joint venture, and that the action of the joint venture and its attorney to forfeit ... Peterson's interest showed McLaughlin's intent to repurchase Peterson's interest."

{35} Our review of the record indicates that Defendants have failed to present evidence indicating that Peterson was aware when Durham filed his initial petition for bankruptcy or that Peterson knew of Durham's conversion of his petition to a Chapter 7 filing, until 1994. Additionally, the record reflects that Peterson disputed that his interest in the joint venture or corporation had been lawfully terminated. He presented evidence indicating that although each of the three shareholders in the corporation were sent letters by McLaughlin requesting that each shareholder pay·to the corporation certain amounts of money in proportion to their ownership interest in order to obtain a loan on behalf of the corporation, that loan was never obtained. He also produced evidence which purported to show that McLaughlin's check tendered in response to such letter was never cashed.

{36} Peterson also presented evidence that Plaintiffs were subsequently notified by Underwood that their interests in the corporation were subject to termination unless the sums previously requested, together with additional amounts, were forthcoming. In this regard, Peterson argues that the trial court in the second action erred in finding that he had zero interest in the corporation because the fact that he owed money to the corporation does not mean that his interest therein was nonexistent. He argues it was error for the trial court to impute no value to his corporate shares based on the corporate financial statements, some of which had not been previously provided to him, and when the accuracy or validity of which were challenged by him. We find these arguments persuasive.

{37} Peterson further asserts that the transfer of a portion of his stock in the corporation to his former wife did not automatically cause a dissolution of his interest because shares in a corporation are generally

transferable. We agree. A factual issue existed as to whether the joint venture agreement was intended by the parties to continue in effect after the assets of the joint venture were transferred to the corporation.

{38} Absent an accounting and a factual determination of the value of the motel and its value as an ongoing business, we conclude that the trial court erred in ruling as a matter of law that Peterson's interest in the motel or business was nonexistent.

■ {39} Moreover, we conclude that the trial court erred in awarding summary judgment and in finding that the letter written by Underwood to the corporate shareholders requesting payment of specific amounts conclusively evidenced McLaughlin's intent to repurchase Peterson's interest. *See Wolford v. Lasater,* 1999–NMCA–024, ¶¶ 7, 11, 126 N.M. 614, 973 P.2d 866 (reiterating that intent is a disputed question of fact). Even assuming that the joint venture agreement entered into among the parties continued in effect after the transfer of assets to the corporation, the agreement provided that in order for a joint venturer to purchase the interest of another joint venturer, the purchase must be accompanied by a "written notice of election" after "giving the defaulting Venturer ten days' written notice, to terminate the interest of such defaulting Venturer if such default has not been cured within the ten-day period." Thus, a disputed, factual issue exists as to whether such notice was ever given and whether Peterson's stock or interest was in fact redeemed by the corporation or purchased by McLaughlin in his capacity as the majority shareholder.

{40} Having determined that both courts erred in denying Peterson's claims for an accounting, we next examine Peterson's assertions that the courts erred in dismissing his claims against Southwest Developers Joint Venture; Claire McLaughlin; Motel Mania, Inc.; H. John Underwood; Richard M. Mounds; and Richard Arlaud in the second lawsuit alleging fraud and breach of fiduciary duty, and alleging breach of loyalty against Claire McLaughlin, Underwood, Mounds, and Arlaud. Peterson also alleged that these Defendants acted both individually and jointly in a conspiracy to defraud him. Peterson additionally sought to impose a constructive trust against the joint venture and Motel Mania, Inc. We believe disputed, factual issues exist precluding summary judgment as to each of Peterson's claims against the remaining Defendants.

{41} Peterson's complaint in the second lawsuit alleged, *inter alia,* that Defendants conspired and sought to defraud Plaintiffs. Defendants strongly denied these allegations and moved for summary judgment, supported by affidavits and other documents. Plaintiffs presented evidence purporting to show that Defendants withheld financial records from them and allegedly concealed payments made by the corporation to McLaughlin or paid on his behalf. Plaintiffs also asserted that the bank records and deposition of Claire McLaughlin showed that McLaughlin contributed $40,000 to the joint venture and not the sum of $80,000 claimed by him.

■ {42} In a motion for summary judgment, the movant has the burden of showing a complete absence of any genuine material issue of fact and that such party is entitled to judgment as a matter of law. *See Roth v. Thompson,* 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992); Rule 1–056 NMRA 1999. Summary judgment should be used with great caution and should not be used as a substitute for trial on the merits. *See Barton v. Las Cositas,* 102 N.M. 312, 316, 694 P.2d 1377, 1381 (Ct.App.1984). In reviewing an appeal from an order granting summary judgment, we review the matters presented in the light most favorable to support a trial on the merits. *See Acosta v. Castle Constr., Inc.,* 117 N.M. 28, 29, 868 P.2d 673, 674 (Ct.App.1994). Viewed in this light, the record reflects there was conflicting evidence concerning Peterson's claims against each of the Defendants in the second lawsuit. Even if the trial court believes that the party resisting summary judgment may not ultimately prevail on the merits, summary judgment is improper if there are one or more contested issues of fact. *See Montoya v. Kirk–Mayer, Inc.,* 120 N.M. 550, 554, 903 P.2d 861, 865 (Ct.App.1995).

{43} Both Plaintiffs and Defendants in the second action submitted requested findings of fact and conclusions of law incident to Defendants' motions to dismiss and summary judgment. Plaintiffs' requested findings asserted that they did not know of the alleged accounting irregularities and other allegations of conspiracy to defraud, fraud, and allegations of breach of fiduciary relationship prior to 1994, when they took the depositions of Defendants. In ruling on the motions for summary judgment, the trial court in the second action refused these requested findings and instead adopted findings determining that the records in the first cause of action show that before January 14, 1994,

> Plaintiff knew, or had reason to know of the existence and the cause of their injury which is the basis of their suit, viz., misrepresented capital contributions, falsified debts, mortgage payments. on the McLaughlin home, improper check signing, falsified financial records, failure to communicate, refusal to talk, transferred assets, failure to send accounting information post 1991, and the withholding of information and forfeiture of their interests.

{44} As a general rule, issues as to whether a claim has been timely filed or whether good cause exists for delay in filing an action are questions of fact, and such issues only become issues of law when the facts are undisputed.[3] *See Hutcherson v. Dawn Trucking Co.,* 107 N.M. 358, 361, 758 P.2d 308, 311 (Ct.App.1988). Here, the issues were, in fact, disputed. Similarly, issues involving intent or knowledge generally involve questions of fact. *See Professional Insurors, Inc. v. Buck Scott & Son Motor Co.,* 110 N.M. 299, 304, 795 P.2d 991, 996 (1990) (stating that issue of intent or knowledge of misrepresentation are question of fact); *see also Lotspeich v. Golden Oil Co.,* 1998–NMCA–101, ¶ 10, 125 N.M. 365, 961 P.2d 790 (determining that, " 'ordinarily claims of fraud present an issue of fact which cannot be determined on motion for summary judgment' ") (quoting *General Accep-*

*tance Corp. v. Hollis,* 75 N.M. 553, 555, 408 P.2d 53, 55 (1965)); *Sierra Blanca Sales Co. v. Newco Indus., Inc.,* 84 N.M. 524, 540, 505 P.2d 867, 883 (Ct.App.1972) (stating the allegations or claims of fraud involved factual issues which precluded summary judgment).

{45} In ruling upon a motion for summary judgment, it is not necessary for the court to adopt findings of fact and conclusions of law because the basic premise underlying an award of summary judgment is the absence of any genuine issue of material fact. Instead, findings of fact are generally entered only following trial on the merits. *See Kiedrowski v. Citizens Bank,* 119 N.M. 572, 574 n. 1, 893 P.2d 468, 470 n. 1 (Ct.App. 1995); *see also Hutcherson,* 107 N.M. at 361, 758 P.2d at 311 (when material facts are disputed, trial court may not determine issues summarily; instead, such issues must be resolved at trial). By entering findings of fact, the courts demonstrated that factual disputes existed which should have precluded summary judgment.

{46} In sum, the record indicates that the depositions and documentary evidence relied upon by Peterson were sufficient to rebut Defendants' claims that he was aware of the basis for his claim against each of the Defendants in the second cause of action more than four years prior to the running of the statute of limitations or that there were no material, disputed factual issues supporting his claims. *See Montoya,* 120 N.M. at 553, 903 P.2d at 864 (holding that disputed factual issue existed as to whether claimant knew, or by exercise of reasonable diligence, should have known prior to running of statute of limitations existence of compensable claim); *see also Bolton v. Board of County Comm'rs,* 119 N.M. 355, 369, 890 P.2d 808, 822 (Ct.App.1994) ("When a litigant is relying on fraudulent concealment or estoppel to toll the running of a statute of limitations, the statute is tolled until the right of action is discovered or, by the exercise of ordinary diligence, could have been discovered.").

---

3. Under NMSA 1978, § 37–1–4 (1880), the statute of limitations for bringing an action for damages based upon allegations of conspiracy to defraud and fraud, and breach of fiduciary duty is four years.

659

*CONCLUSION*

{47}  The orders of dismissal and summary judgment are affirmed in their entirety as to each of Durham's claims.  The orders dismissing Peterson's claims for an accounting in the first action, and the award of summary judgment dismissing Peterson's claims against Defendants in the second action are reversed, and the cases are remanded for further proceedings consistent herewith.

{48}   IT IS SO ORDERED.

ARMIJO and SUTIN, JJ., concur.